Ruggles, J.
 

 delivered the opinion of the court.
 

 The comptroller’s deed is conclusive evidence of the regularity of his sale ; (1 R.
 
 S.
 
 411, § 81,) but not of his power to sell.
 
 (Jackson
 
 v.
 
 Morse,
 
 18
 
 John.
 
 442;
 
 Stryker
 
 v.
 
 Kelly, 2 Denio,
 
 322;
 
 Doughty
 
 v.
 
 Hope,
 
 3
 
 id. 603; S. C.
 
 1
 
 Comst.
 
 79.) Another section of the statute declares that the comptroller’s deed shall vest in the grantee an absolute estate in fee simple. (1
 
 R. S. p.
 
 411, § 80.) But this section applies only to cases in which that officer has power to sell. (18
 
 John.
 
 442.) To give him that power the land must have been assessed in due form by the town assessors ; taxed by the county supervisors ; and the certified .transcript of the assessment must have been transmitted by the county treasurer to the comptroller, with the collector’s affidavit that the tax is unpaid, and the tax must have remained unpaid for two years from the first of May fob
 
 *70
 
 lowing the year when the assessment was made, and be unpaid at the time of the sale. (1
 
 R. S.
 
 391, §§ 11, 12, 13;
 
 id.p.
 
 395, § 33;
 
 p.
 
 399, § 10;
 
 p.
 
 402, 3, § 26;
 
 p.
 
 407, § 52,
 
 and
 
 18
 
 John.
 
 442.)
 

 It is unnecessary here to determine whether the comptroller’s deed is
 
 prima facie
 
 evidence of these facts, on which his power to sell depends ; because if it be so, and be therefore evidence of the assessment, it proves that the lands were described in the assessment as they are described in the deed; and this case turns on the sufficiency of that description.
 

 An accurate designation or description of the land assessed, is essential to the validity of the assessment. The assessment of non-resident lands is made with the ultimate view of collecting the tax by advertisement and sale of the land, if it should not be voluntarily paid. The comptroller’s sale is a rigorous proceeding. It divests the owner of his title without his consent, and often for a very trivial consideration; and the legislature has heretofore shown a cautious solicitude that it should not be done without his knowledge. The comptroller is required to advertise the lands in various modes more than six months before the sale. (1
 
 R. S.
 
 407, §§ 53, 54, 60, 61.) Still further to guard the interests of the landowner, the law gives him two years’ time after the sale, during which he may redeem by paying the tax and interest thereon. The comptroller is required to advertise the lands again for redemption six months before the expiration of the time, by distributing notices specifying every parcel of land unredeemed, and by publication in the newspapers of each county. (1
 
 R. S.
 
 411, §§ 76, 77, 78.)
 

 The assessment must therefore contain a true designation or description of the land to be sold, for two reasons : first, in order that the purchaser at the sale may be able to find and locate the land after his purchase; and secondly, in order that the owner may know that his land is advertised for sale or redemption, and be able to save it by paying the tax. The description of the lands in the advertisements of sale and of redemption are taken from the entries in the comptroller’s books ; and the entries in his books are transcribed from the assessments returned to his office "by the county treasurers. If the land be misde
 
 *71
 
 scribed in the assessment it will of course be misdescribed in the comptroller’s books, and in the notices- of sale -.and of redemption. Mistake or falsity of description in the assessment runs through the whole proceeding.
 

 An assessment of non-resident land is fatally defective and void, if it contain such a falsity in the designation or description of the parcel assessed, as might probably mislead the owner and prevent him from ascertaining by the notices that his land was to be sold or redeemed. Such a mistake or falsity defeats one of the obvious and just purposes of the statute—that of giving to the owner an opportunity of preventing the sale by paying the tax.
 

 In the assessment of the lands in question there was a fatal falsity in describing the parcel of land to be taxed. It was described as lying in the village of Lodi, when, in fact, it lay elsewhere. It was situate in a tract known as the village of Syracuse and not in Lodi, which was known as a different place although both were in the same town. The lands to be sold for taxes are necessarily entered and arranged in the comptroller’s books, and in the advertisements of sale and redemption, according to their respective localities, under the heads of counties, towns, villages, or tracts having known names. The falsity in the description of the land in question would obviously, and of course, cause it to be entered in the comptroller’s books, out of its proper place. Instead of being placed under the appropriate head of Syracuse village, it would be arranged under the head of the village of Lodi, because it was falsely described as situate there. The same error would, from the same cause, occur in the notices of sale and redemption. A landowner exercising ordinary diligence in searching the volume of advertisements to ascertain whether his lands are to be sold for taxes or are to be redeemed after sale, looks under the appropriate head, that is to say, under the name of the tract or place whese his lands lie, and not elsewhere. He might, therefore, be misled and deceived by such a mistake as was made in this case; because for land lying in the village of Syracuse he would look under that head and not under the head of Lodi village. If instead of looking at the advertisements, the owner
 
 *72
 
 in the present case had addressed a note to the comptroller’s office enquiring whether block No. 29, in the village of Syracuse was returned for unpaid taxes and liable to be sold, he would undoubtedly have received an answer in the negative, because the lot in question would not be found returned and entered in its proper place. It is plain that the misdescription would probably mislead; and it is therefore fatal to the validity of the assessment and consequently to the validity of the sale and conveyance by the comptroller.
 

 It is not material to decide in this case whether the transcripts from the comptroller’s books 'were properly admitted in evidence. The deed describes the land as situate in the village of Lodi, and the presumption independent of that evidence is that it was so described not only in the assessment but on the comptroller’s books.
 

 The case of
 
 Dike
 
 v.
 
 Lewis,
 
 (4
 
 Denio,
 
 237; 2
 
 Barb. S. C. Rep.
 
 344,)
 

 (a)
 

 was not so strong a case against the validity of the comptroller’s sale as the present. In that case the tract in which the lot was situate was correctly design ated¿ and the boundaries of the lot were accurately given; but there was a' mistake in the number. It was called 228, when in fact it was 227. The supreme court held the comptroller’s sale to be in-' valid on the ground that the mistake in the number of the lot in the assessment might have misled the owner. The decision rests on a sound principle.
 

 In a deed between individuals, a part of the description of the premises conveyed may be rejected on account of its falsity, if after its rejection there is enough left to show clearly what the owner intended to convey. In this case, if the owner of the land had executed the deed, giving the boundaries correctly, the title might have passed, although the land was falsely described as to the village in which it lay. It would then present the question what the owner intended to convey. There is no such question here. The owner conveys nothing, and does not intend to convey anything. If the officers who under
 
 *73
 
 take to convey for him, intend to convey lands lying in one place, by a deed describing them as lying in a different place, they intend to do what the statute, under which they profess to act, does not permit. A judicial decision which should sane tion a title like the present, would open a door to innumerable frauds.
 

 The judgment of the supreme court must be affirmed.
 

 Judgment affirmed.1
 

 (a)
 

 Dike
 
 v.
 
 Lewis
 
 is reported a Denio after the first trial, and in Barbour'aftet the second trial.