People ex rel. Clark v. Oliver.

PEOPLE *ex rel.* CLARK v. OLIVER, county judge, etc.

*Railroad aid bonds — non-resident owners of land — invalid assessment — consent of tax payer.*

In proceedings to bond the town of I. in aid of a railroad, under chapter 925, Laws of 1871, the petition to the county judge contained the names of forty persons who were not residents of the town. The names of these persons appeared upon the town assessment roll as "non-residents," but the provisions of the statute relating to assessment of lands of non-residents were not complied with. *Held,* that the lands were not taxed as non-resident lands, and the owners thereof could not join in the petition for bonding the town.

The statute makes non-resident owners of land tax payers, and when their names appear on the assessment roll, although not properly taxed, they must be included in estimating the number necessary to unite in a petition for bonding a town.

And their property taxable in the town must be taken into account in ascertaining the aggregate valuation of the taxable property, notwithstanding the assesment may not be legally binding upon them.

CERTIORARI, under Laws of 1871, chap. 925, § 4, brought on behalf of Joel M. Clark, a tax payer of the town of Italy, Yates county, to review proceedings had before the county judge of Yates county, to bond said town in aid of the Geneva and South Western Railway Company.

The decision of the county judge was rendered August 24, 1872, granting the prayer of the petitioners that such town be bonded for $15,000. The other material facts appear in the opinion.

*William S. Briggs,* for relator, cited Laws of 1871, chap. 925, § 1; 1 R. S. 389, etc., §§ 2, 3, 11; *N. Y. & H. R. R. Co.* v. *Lyon,* 16 Barb. 651; *B. & S. L. R. R. Co.* v. *Supervisors of Erie,* 48 N. Y. 93; *Tallman* v. *White,* 2 id. 66; *Whitney* v. *Thomas,* 23 id. 285; *Hubbell* v. *Weldon,* Hill. & D. 140.

*E. B. Pottle,* for respondent, cited *People ex rel. B. & S. L. R. R. Co.* v. *Fredericks,* 48 Barb. 173.

MULLIN, P. J. If it be true, as claimed by the relator, that a majority of the tax payers of the town of Italy who were assessed for property (not including those taxed for dogs or highway tax only),

upon the last preceding assessment roll, or tax-list of said town, and who were assessed, or taxed, or represented a majority of the taxable property upon said last assessment roll, did not unite in the petition, the determination of the county judge is erroneous, and must be reversed.

The number of names upon the petition which were on the last assessment roll of the town of Italy preceding the presentation of the petition to the county judge is 198.

From this number is to be deducted the names of 10 persons who applied to the county judge to withdraw their consent to bonding said town, but to whom the right to withdraw was denied.

The number is thus reduced to 188.

The petition is signed by some 40 persons who are not residents of the town of Italy, and who are only authorized to sign when lands owned by them in the town of Italy are taxed as non-resident lands.

Section 1 of chapter 925 of the Laws of 1871 declares that the word *taxpayer* shall mean any corporation or person assessed or taxed for property, either individually or as agent, trustee, guardian, executor or administrator, or who shall have been intended to have been thus taxed, and shall have paid, or are liable to pay, the tax, as hereinbefore provided, or the owner of any non-resident lands taxed as such.

Annexed to the assessment roll is a list of persons and of lands, headed non-resident, and the names prefixed to the several parcels correspond with names signed to the petition, so that it must be assumed, for the purposes of the case, that the list annexed to the roll contained the names of the non-resident owners of lands in said town of Italy.

To entitle the non-resident owner to become a petitioner, his lands must be taxed as such.

The question then is, are the lands embraced in the list referred to taxed as non-resident lands are by law required to be taxed?

Section 11 of title 2 of article 2 of chapter 13 of the first part of the Revised Statutes (1 R. S., 5th ed., 910), provides that lands of non-residents shall be designated in the same assessment roll, but in a separate part thereof, and in the manner thereinafter provided.

Section 12 provides that if the land to be assessed be a tract subdivided into lots, or a part of it is so subdivided, the assessors shall:

1st. Designate it by its name, if it has one; if it has none, or it is unknown, then they shall state by what lands it is bounded.

2d. If they can obtain correct information as to the subdivisions, they shall enter in the first column of the roll all unoccupied lots in their town owned by non-residents by their numbers alone, and without the names of the owners.

3d. In the second column they shall set down the quantity contained in each lot.

4th. In the 3d column the valuation.

5th. If such quantity be a full lot, it shall be designated by the number alone. If it be a part of a lot, the part must be designated by boundaries, or in some other way by which it may be known.

Section 13 provides, that if the land to be assessed be a tract not subdivided, or if its subdivisions cannot be ascertained, the assessors shall:

1st. Enter in the roll the name or boundaries thereof, and certify on the roll that it is not subdivided, or they cannot ascertain them correctly.

2d. In another column the quantity and valuation.

3d. If the quantity to be assessed be the whole tract, description by name or boundaries will be sufficient, but if a part only is liable to taxation, that part, or the part not liable to taxation, must be particularly described.

4th. If part of tract be settled and occupied by a resident of the town, such part shall be excepted from taxation.

Under the statute, the assessors of Italy were bound to designate the several parcels of land by their names, if they had names, or bound them by the lands surrounding them.

There is no name given to the several parcels, nor are they bounded by the adjoining lands, so that it would be impossible for the owner to ascertain that his lands were taxed, so if sold for taxes the purchaser could not ascertain land purchased, the two objects the legislature designed to secure by requiring a description of non-resident lands in the assessment roll. *Tallman* v. *White*, 2 N. Y. 66, 70, '71; *Whitney* v. *Thomas*, 23 id. 285.

The letters C. S. U. W. C., or S. S. W. P., or the word "swamp," give no intelligible description of land that could be made available to any one for any purpose whatever.

The statute relating to the assessment of non-resident lands must

be substantially complied with, or the assessment will be void. *Hubbell* v. *Weldon,* Hill & Denio, 140.

The lands are not taxed as non-resident lands, and the owners are not authorized to join in the petition for bonding the town.

When the lands are assessed as non-resident the assessors are required to omit the names of the owners from the roll. The non-resident list, in this case, contains the names of "*possessors,*" as they are called by the assessors.

If these persons are the "*possessors*" the lands could not be assessed as non-resident, and if so assessed the assessment would be void.

But, by comparing the non-resident list with the list of petitioners, it appears that these "possessors" are in truth non-residents and are so designated on the petition.

There is in the 1st section of the act of 1871 a strange provision, intended to allow of great latitude in obtaining petitioners in bonding cases, but which it will be found somewhat difficult to interpret. I refer to that clause in which a tax payer is defined to be, amongst others, one who shall have been intended to have been taxed and shall have paid, or is liable to pay, the tax as thereinbefore provided.

When John Doe is named on the roll, but the intention was not to assess him because he was dead or a non-resident of the town, but it was the intention to assess John Smith, the latter would be compelled to submit to the tax if the assessors would swear that he was the person intended, were it not that the statute made it necessary to the complete proof of the intent that Smith had actually paid the tax thus assessed, or was liable to pay it. As John Smith could never be made liable to pay the tax imposed on John Doe, the provision becomes less mischievous, if not entirely harmless.

Deducting the 40 non-residents and the 10, who were entitled to withdraw their names, only 148 names would be signed to the petition while 168 were required.

It is urged by the respondent's counsel that if it is held that the non-resident owners could not become petitioners, they should be omitted altogether from the list of tax payers, so that they shall not be counted in ascertaining the whole number of tax payers in the town.

The respondent's counsel assumes the whole number of tax payers on the roll to be 388. I am unable to find more than 340. This number includes 67 non-resident owners, a majority of this number

is 171. If the whole number of non-residents should be excluded, the number of tax payers would be reduced to 273, a majority of whom is 137. The number of petitioners, less non-residents and those withdrawing, is 147, or 10 more than a majority.

But the non-residents must be counted.

The statute makes non-resident owners tax payers, and the record discloses the number.

Had the non-residents' lands been properly taxed the record would not have shown the number of owners, except by the number of lots or parcels entered on the roll, and as the same persons might own several lots it would be impossible to ascertain the number without resort to evidence, and I do not find any evidence in the case on the subject.

If it should be assumed that there is no proof of non-residence, except as to the 41 whose residence is annexed to their names on the petition, it would follow that 41 must be deducted from 336, the whole number estimated by counsel, which would leave the whole number on roll 295, a majority of whom would be 148. · The whole number of petitioners is 147 after deducting the non-residents and those withdrawing, or one less than a majority. This deficiency would be increased by deducting names not sufficiently proved.

The persons entitled to petition are tax payers, taxed or assessed for property upon the last preceding assessment roll, and who are assessed or taxed, or represent a majority of the taxable property upon said roll.

In case of lands owned by non-residents it could not be said that the owners are taxed for such lands, and hence it would be impossible to ascertain the number entitled to petition. It becomes necessary, therefore, in order to give effect to the provisions of the act of 1871 enabling non-resident owners of lands to petition, that the assessment roll should, in some way, give the names of such owners.

In ascertaining the amount of taxable property in a town it is not necessary that the assessment should be legally binding on the persons assessed. It is sufficient if it appears that the property is taxable in the town.

The proposition may be too broadly stated, but it is not so when applied to lands of non-residents. When the · roll shows those lands in the town owned by such persons, the assessed value of such lands must be taken into the account in ascertaining the aggregate

valuation of the taxable property in the town, although the assessment may be defective in form.

The majority in amount of the taxable property of a town can, in no other way, be arrived at. It is none the less taxable because it is defectively assessed.

A majority of the tax payers, required by the statute, not having signed the petition, the county judge did not acquire jurisdiction to entertain proceedings to appoint commissioners, and his judgment and determination must be reversed, but without costs.

*Decision of county judge reversed.*