(44 Misc. Rep. 394.)

## CITY OF ROCHESTER v. FARRAR.

(Supreme Court, Special Term, Monroe County. June 14, 1904.)

1. TAXATION—ASSESSMENT—DESCRIPTION OF PROPERTY—SUFFICIENCY.

Under a city charter requiring assessors to make up the assessment from the last adopted map, unless otherwise stated, an assessment of a strip of land described as comprising parts of 10 lots in a certain tract, which, as shown by the latest map, contains no 10 lots having an aggregate width equal to that of the strip assessed, is illegal, there being no statement that the assessors proceeded under any other than the latest map.

2. SAME—NECESSITY OF DESCRIPTION.

An accurate description of the land assessed is essential to the validity of the assessment, and without certainty in that respect no foundation is laid for bringing an action to enforce the collection of the tax.

3. SAME—VALIDATION OF ASSESSMENT.

Laws 1903, p. 1187, c. 522, § 1, providing that all taxes theretofore assessed in the city of Rochester are thereby validated and rendered binding, notwithstanding any irregularity, omission, or error in any of the proceedings relating to the same, or in the making, levying, and assessment of the same, does not validate an assessment which was wholly void for failure to sufficiently describe the land.

4. SAME—FORECLOSURE SALE.

A sale under a judgment foreclosing a tax lien cannot convey title to a different tract of land than that described in the assessment roll.

5. SAME—VOID JUDGMENT—COLLATERAL ATTACK.

A void judgment foreclosing a tax lien need not be appealed from, but it may be resisted, and its invalidity asserted, at all times.

6. SAME—FORECLOSURE.

Where property is entered on the assessment roll under an erroneous description, the owner could not ascertain from the tax roll that his property was assessed, and hence, even if he examined the tax roll, he was entitled to defend an action to foreclose the tax lien on the ground that his land had not been taxed.

Action by the city of Rochester against Raleigh Farrar. Complaint dismissed.

William A. Sutherland, for plaintiff.
Quincy Van Voorhis, for defendant.

DAVY, J. This action is brought to foreclose a tax lien. The principal question in dispute is whether the strip. of land assessed is sufficiently described on the assessment roll to identify and indicate that it is the defendant Farrar's property. He contends that the land which was intended to be assessed to Selye, his grantor, was not described on the assessment roll; therefore this action cannot be maintained.

It is conceded that the following is an exact copy of the assessment as appears upon the assessment roll each year:

```
"Name of person assessed...............De V. W. Selye
"Lot No......................1, 2, 3, 4, 5, 6, 7, 8, 9, 10
"What Tract or Subdivision.....Lake View Park Tract
"What part of lot.............................S. Pts.
"Width  front  .......................................33
."Width  rear  .......................................33
"Depth  .........................................1331
"Name  of  street  .............................blank."
```

The Lake View Park tract contains about 60 acres, and is bounded east by Lake avenue, on the west by Dewey avenue, and on the south by a line parallel with the. 50 feet north from the north line of Driving Park avenue. Pierpont avenue runs north and south through the tract. The assessment roll calls for a strip of land 33 feet front and rear off of a tier of 10 lots of the aggregate width of 1,331 feet. It appears from the evidence that there are no 10 lots in the south part of the tract with an aggregate width of more than 500 feet. In fact there are no lots in the tract that answer the description in the assessment roll. It is urged by the learned counsel for the plaintiff that a map of this tract was made in 1850, which shows a strip 33 feet wide extending along the south side of the tract, with 10 large lots, numbered from 1 to

¶ 6. See Taxation, vol. 45, Cent. Dig. § 720.

10, flanking it on the north side, and that the assessment was made with reference to those lots upon the map. It will be seen by that map that Farrar's property is no part of the 10 lots, nor the south part of any 10 lots in Lake View Park tract. The map of 1850 was superseded by the map of 1884, which cuts up the 10 lots into 92 lots besides a street. In making up the assessment it must be presumed that the assessors made it with reference to the map of 1884, because they have said nothing about any other map, and the city charter (section 261) requires them to make it from the last adopted map, unless otherwise stated. The assessors doubtless intended to assess Farrar's land, but they have in fact assessed land which he does not own. It belonged to other parties, and was illegally and improperly assessed to him.

The levying of a tax upon land and the enforcement of the levy are proceedings in rem against the land, and not in personam against the owner. In respect to the collection of taxes assessed against real property an accurate description and location of the land assessed is essential to the validity of the assessment, and without certainty in that respect no foundation is laid to foreclose a tax lien. Tallman v. White, 2 N. Y. 66; Zink v. McManus et al., 121 N. Y. 265, 24 N. E. 467; Sharp v. Johnson, 4 Hill, 92, 40 Am. Dec. 259. The assessment is notice to the owner of the burden cast upon his lands, and limits the title of the purchaser at the tax sale to the land described upon the assessment roll. It has been repeatedly held that all proceedings for the purpose of taxation must be substantially, if not strictly, complied with. Whatever the Legislature has specifically directed in this respect the courts cannot disregard and hold as immaterial. May v. Traphagen, 139 N. Y. 478, 34 N. E. 1064; Merritt et al. v. Village of Portchester et al., 71 N. Y. 309, 27 Am. Rep. 47; Stebbins et al. v. Kay et al., 123 N. Y. 31, 25 N. E. 207; Colman v. Shattuck et al., 62 N. Y. 361; Matter of N. Y. C. & H. R. R. Co., 70 N. Y. 191; People v. Hagadorn, 36 Hun, 610; Dever v. Hagerty, 43 App. Div. 354, 60 N. Y. Supp. 181; Oakley v. Healey, 38 Hun, 244; Underhill v. Keirns, 54 App. Div. 214, 66 N. Y. Supp. 573. This statutory rule cannot be disregarded without encouraging laxity in the discharge of official duty and endangering the rights of the taxpayer.

Cooley, in his work on Taxation (3d Ed.) vol. 1, p. 740, says:

"In listing the land it must be described with particularity sufficient to afford the owner the means of identification, and not to mislead him. The purposes in describing the land are: First, that the owner may have information of the claim made upon him or his property; second, that the public, in case the tax is not paid, may be notified what land is to be offered for sale for the nonpayment; and, third, that the purchaser may be enabled to obtain a sufficient conveyance. The evidence of identity is the record which contains the description; and where the assessment wholly fails to lead to identification, so that the owner can tell that his land is taxed, the duty of payment cannot be enforced, and the assessment is void."

It was remarked by Judge O'Brien in Sanders v. Downs, 141 N. Y. 424, 36 N. E. 391, that:

"It is essential to the validity of every assessment for the purposes of taxation that the statute under the authority of which it is made is complied with in every substantial particular. The only warrant for the imposition of a tax or burden upon the citizen or his property without his consent must

be found in some positive law, and it cannot be enforced unless imposed in the manner pointed out by the statute."

In Colman v. Shattuck, supra, Judge Miller said:

"The intention of the statute was that the assessment should contain a true designation or description of the land, so that the purchasers at the sale might be able to find and locate the same, and that the owner might know that his land was advertised."

An accurate description, therefore, of the land assessed, is essential to the validity of the assessment, and without certainty in that respect no foundation is laid for bringing an action to enforce the collection of the tax.

It is urged by the learned counsel for the plaintiff that the defect in the description of the property was cured by section 1, c. 522, p. 1187, of the Laws of 1903, which provides that:

"All taxes theretofore spread upon the assessment rolls of the various wards in the city of Rochester are hereby validated, and rendered legal and binding upon the persons taxed and property assessed, notwithstanding any irregularity, omission or error in any of the proceedings relating to the same, or in the making, levying and assessment of the same, and all proceedings for the collection of such taxes are hereby declared valid and effectual, notwithstanding any irregularity, omission or error in any of such proceedings, and notwithstanding the omission from any tax warrant of the seal of the city of Rochester."

While this act cures irregularities and omissions in all proceedings for the collection of taxes in the city of Rochester, it does not cure defects in the proceedings where the assessment is void for want of jurisdiction. If the assessors failed to comply with the requirements of the statute in describing the property, so that it could not be located, and that no title to the property could pass to the purchaser at the tax sale, the Legislature could not validate and give life and effect to a void assessment. The Legislature has provided in the charter of the city of Rochester that in case of error in the description of lands the common council may correct such irregularities, and cause the amount of tax imposed to be reassessed on the property. But in this case the common council did not correct the imperfect description in the assessment roll of the land in question and order a reassessment, but treated it as having been sufficiently described. The act comes clearly within the rule laid down by the Court of Appeals in Cromwell v. MacLean, 123 N. Y. 489, 25 N. E. 934, where Judge Peckham, in discussing the question of a tax sale, said:

"Holding, as we must, that no title or interest in fact passed to the purchaser at these tax sales, and that the original owner therefore still retained his title, the effect of the act in question, if valid, is by legislative fiat to transfer the title of the property of Edward C. Wilson, as trustee, to the lessees under these invalid leases for a hundred or a thousand years, as the case may be. Has the Legislature of this state the right to take the property of A. and transfer it to B. under the guise of confirming sales made of such land in invitum, but by which no title in fact or in law passed from the owner to the purchaser? The statement of the question should be its best answer. Property thus taken is not taken by due process of law."

It may be asked, what difference does it make to say that the Legislature is acting only in a way of validating proceedings to collect a tax, which, in justice, the owner of the land ought to pay? The answer

is that the proceedings have been so fatally defective that no title has passed, and the owner has title to his property the same as if no proceedings had been taken. Where is the authority in such case for the Legislature itself to transfer the title of his property to some one else? It was held in Cromwell v. MacLean, supra, that:

"The Legislature undoubtedly has large powers in the way of curing certain defects in proceedings to tax the citizen. If the thing omitted, and which constitutes the defect, be of such a nature that the Legislature might, by prior statute, have dispensed with, or if something had been done, or done in a particular way, which the Legislature might have made immaterial, the omission or irregular act may be cured by a subsequent statute."

But where the assessment is void for want of jurisdiction there is no power on the part of the Legislature to convey the title of a man's property from him to another by the mere exercise of legislative enactment.

It is also urged that on account of nonpayment of the county taxes a foreclosure was had, which resulted in a deed to the purchaser, dated January 3, 1901, which cut off all other claims excepting that of the city of Rochester. By that judgment it appears that the land was described as being the south part of lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, in said tract. Then, in addition, it gives the boundaries as being 33 feet on Lake avenue; running thence south 1,331 feet along the south tier of lot 35 of the 2,000-acre tract, being the south line of Lake Avenue Park tract on the west, 33 feet in length by the north and south street, now called "Pierpont Avenue," and width by a line drawn from Pierpont avenue to Lake avenue parallel with the above-mentioned south boundary line and 33 feet northerly therefrom. This description does not correspond with the description given in the assessment roll, and the county treasurer could not convey by foreclosure sale any different piece of property. The foreclosure could not cure the defect by substituting a new and different description of the land. The deed, therefore, conveyed no title to the land in question. A sale made, when no title passes, cannot be valid, so as to transfer the title by foreclosure proceedings, and the owner of the land is not estopped from showing that the deed is invalid, and conveys no title.

In case of a void judgment the owner of the land is not bound to appeal, but may resist it, and assert its invalidity at all times. This is a fundamental right, in the absence of jurisdiction, for the reason that a judgment or other adjudication is a nullity. Chase et al. v. Chase, 95 N. Y. 381.

It is urged that Selye, Farrar's grantor, was not misled by the assessment, but he knew that the tax was upon his property. There is no proof in the case establishing that contention; but we will assume that Selye examined the tax roll to ascertain whether the strip of land in question, which he then owned, had been assessed. It is evident that he could not have found any assessment which described his property. He had a right, therefore, to repudiate the claim of the city on the ground that his land had not been taxed.

It was said by Judge O'Brien in Sanders v. Downs, supra, that:

"Any construction of the statute which would in any degree encourage erroneous, lax, or careless methods of making up the assessment roll would

disturb the security with which the law guards private rights, and at the same time prove detrimental to public interests."

I am therefore of the opinion that no part of Farrar's land in question was described in the assessment roll, and the assessment, therefore, was void. It is also equally clear that the return of the nonpayment of taxes so levied conferred no authority upon the plaintiff to maintain this action.

The complaint, therefore, must be dismissed, with costs to the defendant Farrar.

