PEOPLE ex rel. NATIONAL PARK BANK v. METZ, Comptroller, et al.

(Supreme Court, Appellate Division, First Department. December 30, 1910.)

1. MANDAMUS (§ 120*)—VOID TAX—SALE FOR NONPAYMENT.

The owner of real estate which has been sold for taxes may bring mandamus against the appropriate public officials to compel acceptance of payment of the tax, and to cancel the tax sale based thereon, on the theory of the tax being void; and, if the sale be void, it is the duty of the court to direct its cancellation.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 254; Dec. Dig. § 120.*]

2. STATUTES (§ 245*)—CONSTRUCTION—TAXATION.

Statutes authorizing the imposition of taxes must be construed strictly in favor of the landowner, and no step required thereby can be declared immaterial; but to make valid a tax or a sale therefor every requisite of the statute, strictly construed, having a semblance of benefit to the owner, must be complied with, if not strictly, at least substantially.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 326; Dec. Dig. § 245.*]

3. TAXATION (§ 788*)—PRESUMPTION OF REGULARITY.

Though a tax lease on a tax sale is by Laws 1874, c. 610, § 6, as amended by Laws 1877, c. 193, § 5, made presumptive evidence that the tax was legally imposed, and of the regularity of all the proceedings attending the assessment and sale, and of the sale, such presumption is overcome on production of the assessment roll or official action showing noncompliance with the statutory requirements.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1555, 1557, 1559–1569; Dec. Dig. § 788.*]

4. TAXATION (§ 421*)—ASSESSMENT ROLL—LAND OF NONRESIDENT—DESCRIPTION.

Under 2 Rev. St. (7th Ed.) p. 991, pt. 1, c. 13, tit. 2, art. 2, §§ 11, 12, 13, relative to assessment of unoccupied lands, of nonresidents, requiring, if the land be a tract, or part of a tract, subdivided into lots, that not only shall the numbers of the lots be given in the first column of the assessment roll, but the tract itself shall be designated by its name, if known, and otherwise it must be stated by what lands it is bounded, and that in the second column the quantity of the land shall be given, and providing that if the land to be assessed be a tract not subdivided, or if its subdivisions cannot be ascertained by the assessors, they shall enter in the roll the name or boundaries of the tract, and certify therein that such tract is not subdivided. or that they cannot obtain correct information of the subdivisions, as the case may be, there being in the assessment roll only the figures 239 in the first column headed "No. of Lot,"

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the second column, headed "Description," being blank, the figure "1" being in the third column, headed "Land Acres," and the word "Unionport," being in another column, headed "Description of Property and Supposed Owner" the description of such property is too indefinite, even if a preceding page of the assessment roll may be consulted, and the words "Map of Unionport," may be read into the description in place of the word, "Unionport"; for it cannot be assumed that there is but one map of Unionport, and that such words had reference to a particular map of ·the village, made by certain surveyors and filed in the office of the register of the county on a certain day.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 720–735; Dec. Dig. § 421.*]

5. EVIDENCE (§ 5*)—JUDICIAL NOTICE—PRIVATE SURVEYS.
    Judicial notice cannot be taken of private surveys.
    [Ed. Note.—For other cases, see Evidence, Dec. Dig. § 5.*]

6. TAXATION (§ 421*)—ASSESSMENT—DESCRIPTION OF PROPERTY.
    The sufficiency of the description of property for the purpose of assessment or taxation is not to be determined by the intention of the assessor, but depends on whether the statutory requirements have been followed, and whether the land has been described with sufficient definiteness to enable the owner and all persons interested therein to know by an examination of the roll, or to ascertain by inquiring at the proper office, what lands are assessed, and to identify them as one particular tract or parcel of land answering to a description on which a purchaser would be entitled to possession.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 720–735; Dec. Dig. § 421.*]

7. TAXATION (§ 660*)—SALE—NOTICES—PUBLICATION.
    It not appearing from the proceedings of a town board, which are matters of record, that the board designated the papers in which notices of the sale should be published, and not otherwise appearing that the notices were published in papers designated by the town board, as required by Laws 1874, c. 610, § 4, as amended by Laws 1877, c. 193, § 4, the sale was void.
    [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 660.*]

8. TAXATION (§ 693*)—SALE—PERFORMANCE OF OFFICIAL DUTY—PRESUMPTION.
    The presumption of the performance of official duty is not applicable to matters of tax sales involving a forfeiture of the ownership or right to possession of the property; nor is there in such a case any presumption of the due performance of official acts based on mere lapse of time, when the·act, if performed, would be matter of record, and there is no record of it, and no evidence that one existed and has been lost or destroyed.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1388; Dec. Dig. § 693.*]

Appeal from Special Term, New York County.

Mandamus, on the relation of the National Park Bank, against Herman A. Metz, as Comptroller, and Daniel Moynahan, as Collector of Assessments and Arrears, of the City of New York. From an order denying its motion for a peremptory writ of mandamus to compel defendants to receive and receipt for a certain tax, and to cancel the record of a tax sale, of certain premises owned by relator, for nonpayment of the tax, relator appeals. Reversed and motion granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Harold Swain, for appellant.

William H. King (Curtis A. Peters, on the brief), for respondents.

LAUGHLIN, J. The petition of the relator shows that by two deeds of conveyance, one dated September 18 and the other September 20, 1888, each duly recorded in the office of the register of the county of New York in Liber 1146, at pages 474 and 477, respectively, on the 3d day of October in the same year, it duly acquired title to a plot of land then in the town of Westchester, county of Westchester, but now in the borough of the Bronx, known as lot No. 239 on a certain map entitled "Map of Unionport, Westchester County, New York," made by Bennett & Savery, civil engineers, bearing date the 1st day of November, 1852, and filed in the office of the register of the county of Westchester on the 23d day of August, 1854, as map No. 29, having a frontage and boundary of 205 feet on the southerly side of Tenth street, bounded easterly by lot No. 238, 216 feet, southerly on Ninth street 205 feet, and westerly on Avenue E 216 feet, the premises being uninclosed and vacant. On the annual assessment roll for the year 1888, there was an attempt made to assess these premises and to impose a tax of $8.88 thereon, and on the 1st day of October, 1889, they were sold by one Michael Rauch, the supervisor of the town, to one Benjamin Sprague for the term of 1,000 years, on account of the nonpayment of the tax, and interest, penalties, and other charges aggregating $10.95. The petitioner avers that no lease was issued to the purchaser on the tax sale, and the answering affidavit that leases were issued to such purchaser as surrendered the certificates of sales is no proof that Sprague surrendered his certificate of sale. This proceeding has been instituted to compel the comptroller of the city and the collector of assessments and arrears of taxes to accept payment of the tax, together with interest thereon, and to have the alleged tax sale canceled; and the theory on which that relief is predicated is that the tax has not in fact been paid for the reason that both the tax and the tax sale were void.

Were it not for precedents, I would not hesitate to express the opinion that after the public officials have collected a tax or assessment by a sale of the premises, and have issued to the purchaser a certificate which may ripen into a lease, the owner claiming that the sale was void should be left to the remedy which he has by a suit in equity for a cancellation thereof as a cloud or threatened cloud on title (King v. Townshend, 141 N. Y. 358, 36 N. E. 513; Stewart v. Crysler, 100 N. Y. 378, 3 N. E. 471), or for redemption to which the purchaser at the tax sale would be a party and in which his rights could be adjudicated (People ex rel. Andrews v. McGuire, 126 N. Y. 419, 27 N. E. 967), for, since the purchaser is not a party to a mandamus proceeding, his rights cannot be affected thereby (Clementi v. Jackson, 92 N. Y. 592; People ex rel. Andrews v. McGuire, supra), and therefore nothing of practical substance is accomplished by a cancellation of a tax sale in a mandamus proceeding to which the appropriate public officials alone are parties; but, although the adjudication in such a mandamus proceeding can have no effect on the rights of the purchaser at the tax sale, it

has been authoritatively decided that an owner of real estate is entitled to bring a mandamus proceeding to compel acceptance of payment of a void tax and to cancel a tax sale based thereon, and, if the sale be void, it is the duty of the court to direct its cancellation (People ex rel. Townshend v. Cady, 51 N. Y. Super. Ct. 316, affirmed 99 N. Y. 620; Clementi v. Jackson, 92 N. Y. 591; People ex rel. Cooper v. Registrar, 114 N. Y. 19, 20 N. E. 611). See, also, People ex rel. Andrews v. McGuire, supra, and Matter of Jones, 18 Hun, 327. The authorities sustaining the landowner's right to this remedy were not overruled by People ex rel. Andrews v. McGuire, supra, where it was held on the particular facts then before the court that the tax sale was not void, and therefore the owner, if entitled to any relief, should seek it by an action in equity to be relieved of the sale or for redemption. The theory on which the remedy is given is that the officials owe a duty to the owner to accept payment and to discharge the lien of the tax and that this can only be met by showing that the tax has been collected by valid statutory proceedings, and that the decision is not an adjudication with respect to the title, and is not binding on the purchaser at the tax sale. We are therefore required to pass upon the validity of the tax and of the tax sale on the facts presented by the record, and, if it be clear that the tax sale is void, then it appears to be our duty to direct its cancellation.

In considering the points presented, it is necessary to bear in mind the rules of law by which they are to be determined. Although it is entirely competent for the Legislature to levy or authorize the levy of taxes and assessments upon land, yet due regard to the rights and interests of property owners requires that statutes authorizing the imposition of taxes and assessments must be construed strictly in favor of the landowner, and it is not competent for the courts to declare immaterial any act, step, or proceeding required by the Legislature (Stebbins et al. v. Kay et al., 123 N. Y. 31, 25 N. E. 207; Clason v. Baldwin, 152 N. Y. 204, 46 N. E. 322) and therefore, in order to render a tax or assessment, or a sale of the premises therefor valid, every requisite of the statute, strictly construed having a semblance of benefit to the owner, must be complied with, if not strictly, at least substantially (Clason v. Baldwin, supra; Sanders v. Downs, 141 N. Y. 422, 36 N. E. 391; Lockwood v. Gehlert, 127 N. Y. 241, 27 N. E. 812; Schreiber v. L. I. R. R. Co., 127 App. Div. 286, 111 N. Y. Supp. 123; King v. Townshend, 141 N. Y. 358, 36 N. E. 513; Cromwell v. MacLean, 123 N. Y., 474–487, 25 N. E. 932; People v. Ladew, 189 N. Y. 355, 82 N. E. 431; Saranac Lake & T. Co. v. Roberts, 195 N. Y. 305, 88 N. E. 753; Zink v. McManus, 49 Hun, 583, 3 N. Y. Supp. 487, affirmed 121 N. Y. 259, 24 N. E. 467). As illustrating the extreme limit to which this doctrine is carried, attention may be drawn to the cases of Lockwood v. Gehlert and Clason v. Baldwin, supra, where it was held that tax deeds were void on account of the mere omission of a seal from a certificate made by the comptroller, when every other statutory requirement had been complied with and the facts essential to warrant the making of a proper certificate were duly established. In Sanders v. Downs, supra, notwithstanding a statute which made the coun-

ty treasurer's deed on a sale of land for unpaid taxes conclusive evidence that the sale was regular and presumptive evidence of the regularity of all prior proceedings, it was held that the insertion of the name of the owner of unoccupied lands, who was a nonresident of the town, in a column under the heading. "Nonresidents," with his address which plainly showed his nonresidence, invalidated the assessment, because the law only required the insertion in the assesment roll of the names of residents of the town who would become personally liable for the nonpayment of the tax. The court was of opinion that the assessors only intended to assess the land, and that the name of the owner was doubtless inserted for identification, or as part of the decription of the land, and yet the court, conceding that there would have been no harm in inserting the name in the second column for the purpose of describing or identifying the land, held that the insertion of the name in the first column left it doubtful whether it was inserted as part of the description and for the purpose of identifying the premises, or for the purpose of including the owner among the taxable inhabitants and thus making him personally liable, and, in so holding, the court say:

"The case is doubtless what may be termed a border one, and the deviation from the express directions of the statute providing for the manner of imposing taxes in such cases may appear to be slight, but the judgment below is sustained by the decisions of this court in cases that differ in no important element of fact from this. Stewart v. Crysler, 100 N. Y. 378 [3 N. E. 471]; People v. Hagadern, 104 N. Y. 516 [10 N. E. 891]. Any construction of the statute which would in any degree encourage erroneous, lax, or careless methods of making up the assessment roll would disturb the security with which the law guards private rights, and at the same time prove detrimental to public interests. If it was possible by any fine distinction to take this case out of the general rule applicable to assessments of this character, it would not be desirable to weaken or qualify by any such exception the safeguards which the Legislature and the courts have erected against the invasion of property rights otherwise than in strict compliance with law."

In the case at bar it is not claimed that there is any statutory presumption with respect to the validity of the tax, or of the tax sale, or any of the steps or proceedings upon which the sale was founded. It appears, however, that a tax lease on such a sale was made "presumptive evidence that the tax was legally imposed, and of the regularity of all the proceedings attending the assessment and sale, and of the sale." Section 6, c. 610, Laws 1874, as amended by section 5, c. 193, Laws 1877. As has been seen, there is no competent evidence that a lease was issued, but, even if it had been issued, that would not avail respondents, for, when the sale was founded, there is a statutory presumption that a tax or assessment, or a sale for nonpayment thereof, or the steps or proceedings relating thereto, are valid, such presumption is at once overcome on the production of the assessment roll or official action, showing that the statutory requirements have not been complied with. Sanders v. Downs, supra; Stewart v. Crysler, supra; People v. Ladew, supra; Schreiber v. L. I. R. R. Co., supra.

The first objection to the validity of the tax presented by the petitioner is that the description of the land is insufficient. The assess-

ment is on page 26 of the assessment roll. The following is presented by respondents as a transcript of the assessment roll with respect to the premises in question:

Assessment Roll of Nonresident Property. Town of Westchester, Westchester County, New York, 18.

| No. of Lot | Description | Land Acres | Valuation | Tax | | Unpaid School Tax | | | | Total Tax | | Date when Paid | Description of Property and Supposed Owner |
| | | | | Dolls. | Cts. | 1st Dist. | 2nd Dist. | 3rd Dist. | 4th Dist. | Dolls. | Cts. | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 239 | | 1 | 300 | 8 | 88 | | | | | | | | Unionport |

The petition shows, however, that the word "Unionport" is only at the head of the column on the page containing this assessment, and is not repeated by ditto marks or otherwise opposite the assessments. It appears by an affidavit read in opposition to the motion that on a preceding page of the assessment roll at the beginning of assessments against numbered lots of Unionport there is entered in the column, "Description of Property and Supposed Owner," the words "Map of Unionport," but the assessment roll contains nothing further to identify the lot or the map. There is no reference to the date of the map, or by whom made, or where it is filed. The return of this tax unpaid contains no description of the premises other than the designation of the lot as 239 in a column under the heading "No. of Lot," and the word "Unionport" in another column, headed "Location" opposite the lot number. In the certificate of sale, the only description of the land is that in a column headed "Acres" the words "Lot No." and "239" under them appear, and in a column headed "Description of Land" are the words "Map of Unionport." It is conceded that the provisions of the Revised Statutes govern in the determination of the questions presented.

The premises were vacant and unoccupied and owned by a nonresident of the town. The controlling provisions are contained in article 2, tit. 2, c. 13, pt. 1, Rev. St., as they existed at the time in question. See 2 Banks' Revised Statutes (7th Ed.) p. 991. The first part of the article is devoted to assessments of land owned by residents of the town or occupied. Sections 11, 12, and 13 relate to the assessment of unoccupied lands owned by nonresidents, and they are as follows:

"Sec. 11. The lands of nonresidents shall be designated in the same assessment roll, but in a part thereof separate from the other assessments, and in the manner prescribed in the two following sections.

"Sec. 12. If the land to be assessed be a tract which is subdivided into lots, or be part of a tract which is so subdivided, the assessors shall proceed as follows:

"(1) They shall designate it by its name, if known by one, or if it be not distinguished by a name, or the name be unknown, they shall state by what other lands it is bounded;

"(2) If they can obtain correct information of the subdivisions they shall put down in their assessment rolls and in a first column, all the unoccupied lots in their town or ward, owned by nonresidents, by their numbers alone

and without the names of their owners, beginning at the lowest number and proceeding in numerical order to the highest;

"(3) In a second column and opposite to the number of each lot, they shall set down the quantity of land therein, liable to taxation;

"(4) In a third column, and opposite to the quantity, they shall set down the valuation of such quantity;

"(5) If such quantity be a full lot, it shall be designated by the number alone; if it be a part of a lot, the part must be designated by boundaries, or in some other way, by which it may be known.

"Sec. 13. If the land so to be assessed be a tract which is not subdivided, or if its subdivisions cannot be ascertained by the assessors, they shall proceed as follows:

"(1) They shall enter in their roll the name or boundaries thereof, as above directed, and certify in the roll that such tract is not subdivided, or that they cannot obtain correct information of the subdivisions, as the case may be."

It will be observed that these statutory provisions require that if the land to be assessed be a tract, or part of a tract, subdivided into lots, not only must the numbers of the lots be given in the first column, but the tract itself must be designated by its name if known, and otherwise it must be stated by what lands it is bounded. That requirement was wholly omitted here. The statute required that the quantity of land be given in the second column, while here the second column was headed "Description," and was vacant. The designation of the tract in the case of a nonresident is a substitute for the name of the owner in person in possession required in the case of the assessment of lands as resident lands. Hubbell v. Weldon, Hill & D. Supp. 139. It is manifest that the assessment cannot be sustained on the theory that the land was part of a tract not subdivided within the meaning of the statute, for, viewed in that light, there would be a total failure to comply with the requirements of section 13.

It is contended by counsel for the respondents that the word "Unionport" in the column headed "Description of Property and Supposed Owner" relates to all of the assessments on the page, and by a reference to a preceding page of the assessment roll shows that it had reference to a map of Unionport, which was a village in the county of Westchester. This was not, I think, a compliance with the statutory requirements. I am of opinion that it will not do to sustain a description of land in a tax roll by consulting other parts of the roll, to which the particular assessment contains no reference, for that would require an examination of the entire roll, and not merely the part which the statute contemplated should be complete in itself as to the property assessed. The only authority for describing the property in a subsequent proceeding for a sale of the lands for the collection of the tax is the description as assessed. Manifestly, if the description be confined to lot 239, Unionport, it is altogether too indefinite, and the tax would be invalid. Assuming, however, that the preceding part of the roll may be consulted, and that the words "Map of Unionport" may be read into this description, still I am of opinion that the description would be insufficient, for it is not to be assumed that there is only one map of the village of Unionport, and with no other words of identity it cannot be said that the owner is chargeable with notice that the description has reference to a particular map of the village of Union-

port, made by certain surveyors and filed in the office of the register of the county of Westchester on a given day. Of course, if a tract of which the court could take judicial notice had been specified by township, range and lot number, that would have answered (Colman v. Shattuck, 2 Hun, 501, affirmed 62 N. Y. 348), but the court cannot take judicial notice of private surveys. The question of the sufficiency of a description of property for the purposes of assessment or taxation is not to be determined by the intention of the assessors, but depends upon whether the statutory requirements have been followed, and whether the land has been described with sufficient definiteness to enable the owner and all persons interested therein to know by an examination of the roll, or to ascertain by inquiring at the proper office, what lands are assessed, and to identify them as one particular tract or parcel of land answering to a description upon which a purchaser would be entitled to possession. Hubbell v. Weldon, Hill & D Supp. 139; People ex rel. Clark v. Oliver, 1 Thomp. & C. 572; Oakley v. Healey, 38 Hun, 244; Dike et al. v. Lewis et al., 4 Denio, 237; Dike et al. v. Lewis, 2 Barb. 344; Clark v. Holdridge, 12 App. Div. 613, 43 N. Y. Supp. 115; Tallman v. White, 2 N. Y. 66; Clason v. Baldwin, supra; Zink v. McNamus, supra; Matter of N. Y. C. R. Co., 15 Wkly. Dig. 137, affirmed 90 N. Y. 342; City of Rochester v. Farrar, 44 Misc. Rep. 394, 89 N. Y. Supp. 1035; Smith v. Walker (Super. N. Y.) 4 N. Y. Supp. 632; People ex rel. Buffalo Burial Park Ass'n v. Stillwell, 190 N. Y. 284, 83 N. E. 56; Lawton v. New Rochelle, 114 App. Div. 884, 100 N. Y. Supp. 284; Black on Tax Titles (2d Ed.) p. 139.

I am also of opinion that the tax sale was void on other grounds. The statute does not seem to require that proof of publishing and posting the notice of sale be made a matter of record, and it cannot be held, I think, as matter of law on the record before us, that the notices were not published for the requisite period and were not posted and were not in due form; but the proceedings of the town board are matters of record, and it does not appear therefrom that the board designated the papers in which the notices should be published, nor does it otherwise appear that the notices were published in papers designated by the town board as required by law. Section 4, c. 610, Laws 1874, as amended by section 4, c. 193, Laws 1877. The presumption of the due performance of official duty which prevails in other cases is not applicable to matters of taxation involving a forfeiture of the ownership or right to possession of property, nor is there in such cases any presumption of the due performance of official acts based on mere lapse of time, when the act if performed would be a matter of record, and there is no record of it and no evidence that one existed and has been lost or destroyed. Hilton v. Bender, 69 N. Y. 75; People ex rel. Townshend v. Cady, 51 N. Y. Super. Ct. 316, affirmed 99 N. Y. 620. The regularity and validity of the proceedings subsequent to the sale are not presented for discussion by the prayer for relief contained in the petition, which is limited to compelling the acceptance of the tax with lawful interest and the cancellation of the tax sale, and therefore no opinion is expressed with respect thereto.

It follows, therefore, that the order should be reversed with $10 costs and disbursements, and the motion for a peremptory writ of mandamus granted as prayed for, with $10 costs.

McLAUGHLIN, CLARKE, and SCOTT, JJ., concur.  INGRA-HAM, P. J., concurs in result.