PEOPLE ex rel. SUDAM v. MORGAN.

(Supreme Court, Appellate Division, Third Department. November 15, 1899.)

1. TAXATION—APPLICATION FOR CANCELLATION OF INVALID TAX SALE—NATURE OF CLAIM.

An application to the state comptroller to cancel an invalid tax sale of lands, and to refund the purchase money, is not an action, either at law or in equity, to enforce a claim, within the statute of limitations, but simply a presentment of the claim.

2. SAME—TIME WITHIN WHICH APPLICATION SHALL BE PRESENTED.

Under Const. art. 7, § 14, adopted in 1874, providing that no state officer shall audit, allow, or pay any claim which, as between citizens of the state, would be barred by lapse of time, and that the limitation of claims then existing shall begin to run from the adoption of such section, a claim, existing in 1874, to have an invalid tax sale of lands canceled, and the purchase money refunded, as provided for by Laws 1896, c. 908,

§ 140, providing that it shall be the duty of the comptroller, on receiving satisfactory evidence of the invalidity of a tax sale of lands, to refund the purchase price, with interest, is outlawed as against the state unless presented within the time that an action would lie against a citizen of the state to recover purchase money, on failure of title.

3. SAME—APPLICATION OF STATUTE TO CLAIMS BARRED AT TIME OF PASSAGE. Laws 1896, c. 908, § 132, declaring that all conveyances executed by the comptroller on tax sales which have been recorded for two years shall be conclusive evidence that the sale and proceedings prior thereto were regular, and providing that all such conveyances and certificates, and the taxes and tax sales on which they are based, shall be subject to cancellation, for certain reasons, on direct application to the comptroller, provided that such application shall be made, in the case of all sales held prior to 1895, within one year from the passage of the act, and in case of the sale of 1895 and all sales thereafter held that such application shall be made within five years from the expiration of the period allowed by law for the redemption of lands sold at the particular sale sought to be canceled, does not apply where the right to prove the tax sale invalid and demand that the purchase money be refunded had become barred under Const. art. 7, § 14, adopted in 1874, by lapse of time, before said section was passed.

Proceeding by the people of the state of New York on relation of Helen C. Sudam, against William J. Morgan, as comptroller of the state of New York, by certiorari, to review the determination of the comptroller in denying the application of the relator for a cancellation of certain tax sales. Judgment for defendant.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Thompson & Andrews, for relator.

J. C. Davies, Atty. Gen., for defendant.

PARKER, P. J. In 1848, Harrison Sudam, now deceased, purchased certain lands sold at the state tax sale of that year, and subsequently took a conveyance from the comptroller for the same. In 1852 he purchased certain other lands at the tax sale of that year made by the county treasurer of Ulster county, and took from the proper county officers a conveyance therefor. Upon the death of Harrison Sudam, the relator, Helen C. Sudam, was appointed his executrix, and on May 21, 1897, she applied to the comptroller of the state to cancel such tax sales, and refund the amounts paid upon such purchases, with interest, upon the ground that such sales were invalid, and that the conveyances so given conveyed no title to such lands. The comptroller denied such application on the ground of the purchaser's laches in making it. Whether or not the sales were in fact invalid, he refused to inquire into, placing such refusal solely upon the ground that the applicant was too late in presenting her claim. For the purpose of reviewing such determination, the relator has, by certiorari, brought the matter before this court; and evidently the only question to be here considered is whether, on account of the delay on the part of the purchaser in making such application, the comptroller was warranted in declining to entertain it. The sale of 1848 was made under 1 Rev. St. (2d Ed.) c. 13, tit. 3, art. 3, and by section 98 of that title it was provided that:

"If the discovery that the sale was invalid shall not be made until after a conveyance shall have been executed by the comptroller for the lands sold,

it shall be the duty of the comptroller, on receiving satisfactory evidence thereof, to refund out of the treasury, to the purchaser, his representatives or assigns, the purchase money and interest thereon; and to re-charge the county from which the tax was returned, with the amount of the tax and interest at the rate of seven per cent. from the time interest was charged thereon by him, and such county shall cause the same to be levied and paid as provided in the last section."

The sale of 1852 was under the provisions of chapter 298 of the Laws of 1850, and section 104 of that act contained a provision for the comptroller's canceling an invalid sale, and refunding the purchase money, similar to that above quoted. Both of those acts were superseded by the general act for the taxation of property contained in chapter 427 of the Laws of 1855; but that act also, in section 85, contained a similar provision to the one above cited. Such provision, with slight amendment, has been continued down to the present time. See section 140 of chapter 908 of the Laws of 1896. It is solely by virtue of these provisions that a purchaser at a tax sale which had proved invalid has any claim against the state for a refunding of the purchase money paid by him; and it is under the provisions of section 140, above cited, that the relator makes this claim. The grounds upon which such sales are claimed to have been invalid are that the returns under which the sales were made did not show that the lands were assessed as nonresident lands, and also that in some instances the description of the lots was so indefinite that the land could not be located. Evidently such errors were discovered by the purchaser soon after his conveyances were received, and nearly half a century elapsed before any application was made to the comptroller for a cancellation of the sales and a refunding of the purchase money. Does this long lapse of time in itself justify the comptroller in refusing to receive proof of the invalidity of these sales, and in refunding the purchase money in the event that such proof is made? It is to be noticed that the statutes under which this claim is given do not limit the time within which the application for cancellation must be made. On receiving satisfactory evidence that it is invalid, the comptroller shall cancel the sale and refund the money. Such application is not an action, either at law or in equity, to enforce a claim. It is simply a presentment of the claim, with proof that it is a just one; and the comptroller is thereupon directed by statute to pay it. It may be doubted whether mere lapse of time in presenting the claim does, under such a statute, bar the right of the applicant to call upon the comptroller to comply with its provisions. But, however that may be, the comptroller replies that section 14 of article 7 of the constitution, first adopted in 1874, must thereafter be considered in connection with the statutes above referred to. That constitutional provision provides, in substance, that no state officer shall "audit, allow, or pay any claim which, as between citizens of the state, would be barred by lapse of time." It also further provides that the limitation of claims then existing shall begin to run from the adoption of such section. Undoubtedly this is a claim for the refunding of purchase money which the state has received for a title which proved invalid and worthless to the purchaser; and conceding that in 1874 it was

an existing claim against the state, I am of the opinion that thereafter the statutes creating it were so far modified that the purchaser did not have an unlimited time in which to present it. Thereafter such claims, unless presented within the time that a similar claim should be presented against a citizen of the state, were "outlawed" as against the state. The direction to the comptroller to pay them, contained in the statutes above referred to, is modified by the constitutional provision to pay them only in case they are not thus outlawed.

It is argued on the part of the relator that no claim similar to this could exist as between citizens. But the gist of this claim is that the state has received the purchaser's money for a title that has utterly failed, and therefore a just claim arises that it should be refunded. Such a claim is one that frequently arises as between citizens, and one to which the statute of limitations is constantly applied. The plain purpose of this constitutional provision, in my judgment, is to place the citizen, with reference to any claim he may have against the state, in the same position in which he would be were the claim against a fellow citizen. In short, it makes the statute of limitations available to the state to the same extent that it is available between citizens; and any citizen who would claim from the state that his purchase money be refunded because the title given him has failed must exercise the same diligence to recover it that he would have to use if he made the same claim against a citizen. Board of Sup'rs of Cayuga Co. v. State, 153 N. Y. 279, 47 N. E. 288. Such constitutional provision, however, further provides that it shall not "extend to any claim duly presented within the time allowed by law, and prosecuted with due diligence from the time of such presentment," and the relator claims that such exception applies to this case for the following reasons: Section 132 of chapter 908 of the Laws of 1896, after declaring that all conveyances executed by the comptroller upon tax sales which have for two years been recorded in the county where the lands were located shall be conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, etc., were regular, etc., further provides:

"But all such conveyances and certificates, and the taxes and tax sales on which they are based, shall be subject to cancellation, by reason of the payment of such taxes, or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid, or by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds, on direct application to the comptroller, or in an action brought before a competent court therefor: provided, however, that such application shall be made, or such action brought, in the case of all sales held prior to the year eighteen hundred and ninety-five, within one year from the passage of this act; and in case of the sale of eighteen hundred and ninety-five and of all sales hereafter held, that such application shall be made, or such action brought, within five years from the expiration of the period allowed by law for the redemption of lands sold at the particular sale sought to be canceled."

That act became a law May 27, 1896, and it is therefore insisted that this section is a direct authority to present this claim at any time before May 27, 1897. It is to be noticed that this section per-

mits the cancellation in those instances only where the reason assigned was either payment of the taxes, or that the tax had been levied by a town having no legal right to assess the land on which it was laid, or by reason of some defect in the proceedings affecting the jurisdiction upon constitutional grounds. The relator claims that the defect assigned by him is a jurisdictional one. It is not entirely clear that he is correct in this claim, but, concede that he is, nevertheless I am of the opinion that he is not aided by the section in question. Under the constitutional provision of 1874 his right to prove the sale invalid and demand that the purchase money be refunded had become barred by lapse of time long before section 132 was passed; and it cannot be considered that the legislature intended by its enactment to revive this or any claim against which the limitation therein created had run. That section must be construed as referring only to those instances in which the right to cancellation still existed. McDougall v. State, 109 N. Y. 73, 80, 16 N. E. 78; Gates v. State, 128 N. Y. 221, 227–229, 28 N. E. 373. I conclude, therefore, that by virtue of the constitutional provision of 1874 the relator's claim was, when presented to the comptroller, barred by lapse of time; that it was not renewed nor affected by section 132 above cited; and that, therefore, the comptroller was without authority to entertain it.

Determination of comptroller confirmed, with $50 costs and disbursements. All concur.