(71 Misc. Rep. 222.)

### SHEA et al. v. CAMPBELL et al.

(Supreme Court, Trial Term, Oswego County. September 24, 1910.)

1. WILLS (§ 439*)—CONSTRUCTION—TESTATOR'S INTENT.
    In determining the nature of an estate devised, testator's intent controls if it can be ascertained.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 955; Dec. Dig. § 439.*]

2. WILLS (§ 600*)—ESTATE DEVISED.
    A will gave testator's widow all his property "for her own benefit and use during her natural life," directed a division of any property remaining after her death, and empowered her to sell all or any part of decedent's property. Held, that the widow could convey an absolute title.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1338; Dec. Dig. § 600.*]

3. DEEDS (§ 77*)—WANT OF CONSIDERATION—RIGHT TO OBJECT.
    Failure of consideration for a deed to grantor's attorney can only be raised by direct proceedings to set aside the deed, brought by the grantor or her personal representatives or some one claiming under her, and is not available to a stranger to the transaction.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 209; Dec. Dig. § 77.*]

4. DEEDS (§ 196*)—MENTAL CAPACITY OF GRANTOR—EVIDENCE—PRESUMPTIONS.
    A grantor is presumed to have been mentally competent.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 591; Dec. Dig. § 196.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. INSANE PERSONS (§ 61*)—DEEDS—VALIDITY.
   The deed of a lunatic, before office found, is merely voidable, and only one in privity with the lunatic can object to his insanity.
   [Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 93–99; Dec. Dig. § 61.*]

6. TAXATION (§ 415*)—ASSESSMENT—VALIDITY.
   Under Tax Law (Laws 1896, c. 908) § 9, requiring land owned by a person resident outside the tax district to be assessed to the occupant, if occupied, an assessment of such land as nonresident is void.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 697; Dec. Dig. § 415.*]

7. TAXATION (§ 421*) — ASSESSMENT ROLLS — DESCRIPTION OF LAND — SUFFI-CIENCY.
   A description of a lot on an assessment roll as, "Lot 7, sub. 2, 15 acres, O. R. Jones lot," is fatally insufficient as a description of a particular six-acre tract owned by another person.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 720; Dec. Dig. § 421.*]

8. TAXATION (§ 805*)—TAX DEEDS—CANCELLATION—LIMITATIONS.
   Under Laws 1896, c. 908, § 132, making tax deeds conclusive, after they have been recorded two years, as to the regularity of proceedings on which they are based, except that suit may be brought within five years to cancel a deed for a jurisdictional defect, after the lapse of such time a tax deed is not subject to attack on account of improper assessment, imperfect description, or other irregularity.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1595; Dec. Dig. § 805.*]

9. CONSTITUTIONAL LAW (§ 308*)—DUE PROCESS OF LAW — TAX DEEDS—CAN-CELLATION—LIMITATIONS.
   Laws 1896, c. 908, § 132, limiting the time for suit to cancel a tax deed for a jurisdictional defect, is valid as a statute of limitations.
   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 925; Dec. Dig. § 308.*]

10. CONSTITUTIONAL LAW (§ 308*)—DUE PROCESS OF LAW—TAX DEEDS—LIMI-TATIONS.
    The Legislature can enact statutes limiting the time for suing to cancel a tax deed.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 925; Dec. Dig. § 308.*]

11. TAXATION (§ 786*)—TAX DEEDS—EFFECT.
    Limitations having run in favor of a tax deed, all title under a prior tax deed for prior taxes was thereby devested.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1554; Dec. Dig. § 786.*]

12. TAXATION (§ 788*)—TAX DEEDS—VALIDITY.
    Laws 1896, c. 908, § 132, making a tax deed conclusive that all notices required to be given before expiration of the time allowed for redemption were regular, etc., covers any notice to redeem.
    [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 788.*]

13. TAXATION (§ 699*)—TAX DEEDS—VALIDITY.
    A tax deed is not affected by tender of the taxes to the county treasurer after expiration of the redemption period.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1402–1405; Dec. Dig. § 699.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

14. EJECTMENT (§ 127*)—DAMAGES—USE AND OCCUPATION.

 A successful plaintiff in ejectment is entitled to damages for use and occupation of the property while adversely held by defendant.

 [Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 438–443; Dec. Dig. § 127.*]

Ejectment by John W. Shea and another against James H. Campbell and others. Judgment for plaintiffs.

John W. Shea, for plaintiffs.
S. C. Huntington, for defendants.

MERRELL, J. This is an action of ejectment, brought in behalf of Charles E. Shea, grantee, by and in the names of John W. Shea and Sylvia L. Shea, his grantors, under section 1501 of the Code of Civil Procedure, to recover possession of certain real property, situate in the village of Altmar, town of Albion, Oswego county, N. Y., together with damages for alleged injury thereto, and for the use and occupation thereof.

The property in question, consisting of about six acres of land, with the dwelling house and barn thereon, was owned and in the possession of one Osmon R. Jones at the time of his decease in October, 1887. Osmon R. Jones died leaving a last will and testament, which was thereafter and on the 1st day of December, 1892, duly admitted to probate in the Surrogate's Court of the County of Oswego as a will valid and sufficient to pass the real property of said deceased. Said deceased left him surviving Sarah A. Jones, his widow, and three daughters, Ella M. Tidd, Alice Jones, and Edith Jones, his only heirs at law. The daughters, Alice and Edith, subsequently married, becoming, respectively, by such marriages Alice Nichols and Edith Cahill.

By the first clause of said will the testator, after the payment of his debts, gave unto his widow all his property, real and personal, "for her own benefit and use during her natural life."

By the second clause the testator directed that:

"If any property remains after the death and burial of my beloved wife, Sarah A. Jones, the same to be divided between our three daughters, Ella Tidd, Alice Jones and Edith Jones in such manner and such proportion to each as my beloved wife, Sarah A. Jones, shall think best in her last will and testament, and in case my beloved wife, Sarah A. Jones, shall make no will or testament, then the property remaining, if any there shall be, to be divided equally between her living children, share and share alike."

The testator named his said wife sole executrix of said will and gave her "full power and authority to sell all my real estate and personal property, or any part or parcel thereof, and execute and deliver to the purchaser thereof a good and sufficient title."

On July 12, 1904, the widow, Sarah A. Jones, individually, by warranty deed dated that day, conveyed to the plaintiff, John W. Shea, the real property in question. The consideration in said deed was expressed as follows:

"Five hundred dollars due for services as an attorney in two actions in the Supreme Court, wherein party of the first part was plaintiff, to establish title

to these premises upon which party of the second part has a lien under Sec. sixty-six of the Code of Civil Pro. & other consideration."

It seems that prior thereto and on January 26, 1894, by warranty deed dated on that day, in consideration of the maintenance and support of herself and her infant daughter Edith by her son-in-law William Nichols and his wife, her daughter Alice Nichols, in accordance with an agreement in writing executed that day and delivered to her by said Nichols and wife, the said Sarah A. Jones conveyed to said Nichols and wife the premises in question.

This arrangement for the maintenance of Mrs. Jones apparently did not result harmoniously, and on July 20, 1894, she became an inmate of the St. Lawrence State Hospital for the Insane at Ogdensburg. It is claimed by the plaintiffs that her confinement in that institution was accomplished through treachery by the daughter Alice Nichols and her husband with the hope of getting rid of the old lady and relieving themselves of the burden of her support. Be that as it may, Mrs. Jones remained an inmate of the hospital until March 29, 1897, when, on the declaration of her daughter Ella Tidd of her ability and willingness to support her mother, she was discharged.

Prior thereto and on January 9, 1896, an action had been commenced in Supreme Court by Mrs. Jones against her son-in-law William J. Nichols and her daughter Alice Nichols in ejectment to recover possession of said real property upon the ground that her said grantees had failed to furnish the maintenance and support under and as provided by said deed and concurrent agreement. In that action the plaintiff John W. Shea, who is an attorney and counselor of the Supreme Court, acted as her attorney. An answer was interposed by defendants and the issues were sent to a referee for trial. Upon the trial the referee dismissed the complaint, and appeal was taken to the Appellate Division and reversal secured by plaintiff, and the case sent to another referee. The case has never been brought to trial before the new referee.

While Nichols and wife were the owners of the property in question, they applied to and secured from the Oswego County Savings Bank a loan of $500, and as security therefor executed to said bank their mortgage upon said premises. Default having been made in the payment of said. mortgage, proceedings were taken by said Savings Bank to foreclose the same. Thereupon the said Sarah A. Jones. through the plaintiff John W. Shea, as her attorney, brought action in the Supreme Court to restrain the foreclosure of said mortgage and to set the same aside. In that action the plaintiff succeeded.

The two actions above mentioned are the two Supreme Court actions mentioned in the deed from Mrs. Jones to the plaintiff John W. Shea, and his services as her attorney in these actions are claimed to be a consideration for such deed. Plaintiff bases his right to recover in this action mainly upon the said deed of July 12, 1904, although he also claims title to said premises by virtue of a tax deed, to which reference will hereafter be made.

The defendant James H. Campbell claims to hold the premises in question adversely to the plaintiff, basing his claim of title upon a deed

from the supervisor of the town of Albion, dated December 21, 1905; said town claiming to have obtained title through a deed from the county treasurer of Oswego county pursuant to sale of said premises for unpaid taxes, and said defendant also claiming under a quitclaim deed thereof, dated December 15, 1908, from two of the daughters of Osmon R. Jones, namely, Ella Tidd and Edith Cahill.

Plaintiff's deed of July 12, 1904, is assailed by the defendants upon three grounds:

First. That Sarah A. Jones did not take the fee of the premises in question under the will of Osmon R. Jones, but a bare life estate with no power of disposition during her lifetime, and that therefore her deed to the plaintiff purporting to convey an absolute title was a nullity.

Second. That there was a failure of consideration for said conveyance by Mrs. Jones to the plaintiff; the defendants alleging that there was no substance to any claim or lien by plaintiff for unpaid legal services. The defendants allege that the first Supreme Court action above referred to, brought by Mrs. Jones against her daughter and son-in-law to obtain possession of the premises, was the only basis of any consideration, and that the plaintiff Shea brought said action on a mistaken theory of law and practice; that the proper relief which the plaintiff should have sought was not ejectment, but an action to establish her lien upon the premises for her support, to find the amount thereof, and to foreclose the same.

Third. That at the time of the alleged conveyance by Mrs. Jones to her attorney she was not of sufficient mental capacity to execute a deed of the premises.

Considering these objections to plaintiffs' title in the order named: First, did the will of Osmon R. Jones devise to his widow either an absolute title to the premises, or a life estate with such a beneficial power of disposition as would enable her to convey a perfect title to her grantee, or did she take a bare life estate with a remainder over to the three daughters?

In determining the widow's estate under the will, we must, if possible, ascertain the intention of the testator as the primary guide to the consideration of his will. He left all his property, real and personal, to her "for her own benefit and use during her natural life." The word "benefit," as used by the testator, is clearly hostile to a mere life estate, but quite harmonious with a more lasting estate, and were it not for the added words limiting her use and benefit to her natural life I would think the testator intended to devise an absolute fee. Crain v. Wright, 114 N. Y. 310, 21 N. E. 401.

In this case (Crain v. Wright) the testator gave his wife "fifty acres of land off the north end of my farm to have and to hold for her benefit and support," with the remainder to a son, after paying certain named legacies. Here was an absolute devise, and, while that case holds that the use of the word "benefit" is consistent with a devise in fee and inconsistent with a devise of a mere life estate, in the case at bar Mrs. Jones' estate is expressly limited for the term of her natural life. Judge Vann, in the Crain Case, in referring to Henderson v. Blackburn, 104 Ill. 227, 44 Am. Rep. 780, and Paine v. Barnes, 100 Mass.

470, cited as authority for construing that will as devising only a life estate, calls attention to the express limitation of the gift by the use of the words "during her lifetime," in the former, and "during her natural life," in the latter case, and implies that, had the will in the case before him contained such words of limitation, the construction would have been that the testator intended a life estate only.

But while the testator, Osmon R. Jones, did not devise to his widow a fee in his real property, it seems to me that he intended more than a life estate, and that the subsequent provision to the effect that, if any property remained after the death and burial of his wife, it was to be divided by her will among their three children in such proportions as she might think best, clearly implied a beneficial power in the widow to dispose of the property during her lifetime. It was testator's evident intention that his widow should have all of his property for her sole use and benefit so long as she should live. She could at pleasure use the corpus as well as any income it might produce. All might be used if it pleased her. She was in entire control. Nor did the testator absolutely provide any remainder over, but merely anticipated that there might be something left unconsumed by his widow, and, "if any" there should remain undisposed of by her in her lifetime, he directed that the same be divided by her in her will among their children in such proportions as she deemed best, or, in the event of her dying intestate, then such remainder, "if any," was to be divided equally among their living children. Clearly this language of the testator implied the beneficial power of the widow to dispose of any or all of his property, and in the absence of other objection her deed to the plaintiff Shea conveyed an absolute title. Leggett v. Firth, 132 N. Y. 7, 29 N. E. 950; Campbell v. Beaumont, 91 N. Y. 464, 468; Mitchell v. Van Allen, 75 App. Div. 297, 78 N. Y. Supp. 149; Kendall v. Case, 84 Hun, 124, 32 N. Y. Supp. 553; Seaward v. Davis, 198 N. Y. 415, 91 N. E. 1107.

The conveyance to the plaintiff Shea is further attacked upon the ground of want of consideration. The defendant, at great length, attempts to show that the consideration of plaintiff's deed was services rendered by the plaintiff for Mrs. Jones in her action against her son-in-law Nichols and his wife; that such action was improperly brought in ejectment; that under well-settled practice the relief which he should have sought in behalf of his client was either an action upon the covenants in the agreement for her support or to have her support declared a lien on the premises, the amount thereof fixed, and the lien foreclosed; that, having pursued a wrong remedy, he was entitled to no pay and had no lien on the premises for his services as stated in the deed; and that therefore there was a failure of consideration. While the defendant may be correct in his contention as to plaintiff having chosen a wrong remedy for his client, yet it seems to me that the defendant is not privity to the transaction between Mrs. Jones and the plaintiff Shea, and therefore is not in position to raise that objection. It seems to me that the claim of failure of consideration can only be raised by direct proceedings to set aside the deed by the grantor or her personal representatives, or by some person claiming under

her. Campbell is neither, and plaintiff's deed cannot be collaterally attacked. If Mrs. Jones had been overreached by plaintiff and a fraud perpetrated upon her, undoubtedly she, or, after her death, her personal representatives or those claiming under her, might have brought action directly to undo the wrong inflicted upon her; but Campbell, an entire stranger, cannot be heard to complain.

This is equally true as to defendant's criticism that the grantor, Mrs. Jones, was of unsound mind when she executed the deed to plaintiff. The evidence presented falls far short of establishing such a weakened condition of mind as would avoid the deed. Such testimony as was offered was altogether too remote and disconnected to convince me that the grantor did not appreciate her act. No proceedings were ever had to declare Mrs. Jones an incompetent person, and no committee was ever appointed over her, and presumptively her act was that of a competent person. The law in this state has long been well settled that the deed of a lunatic, before office found, is not void but voidable only, and that therefore one who is not a privity with the lunatic cannot object to his insanity. Jackson v. Gumaer, 2 Cow. 552; Blinn v. Schwartz, 63 App. Div. 25, 71 N. Y. Supp. 343; Ingraham v. Baldwin, 9 N. Y. 45, 48; Baldwin v. Golde, 88 Hun, 121, 34 N. Y. Supp. 587, s. c. 88 Hun, 115, 34 N. Y. Supp. 587.

I therefore conclude that the deed from Mrs. Jones to the plaintiff conveyed a good title to the premises in question, and that therefore the daughters had no remainder in their father's estate on the death of their mother, and the quitclaim deed from these daughters, Ella M. Tidd and Edith Cahill, of December 15, 1908, was a nullity and conveyed no title to the premises.

We now come to the question of defendant's adverse title under his deed from the supervisor of the town of Albion. That deed purports to convey all right, title, and interest of the town of Albion in the premises in question. The town's title came through a deed, dated November 21, 1903, from the county treasurer of Oswego county under a sale thereof made on October 29, 1901, for unpaid taxes.

The plaintiff urges various objections to the regularity of the proceedings relative to the assessment of the property and the subsequent proceedings culminating in its conveyance by the county treasurer to the town of Albion aforesaid, alleging that such proceedings were so irregular and that the statutory requirements were so disregarded that defendant Campbell acquired no title under his deed. Of the objections raised by plaintiff, I think by far the most serious is that the property was assessed as nonresident and in the nonresident part of the assessment roll; whereas, the property at the time, while owned by Mrs. Jones, who resided out of the county of Oswego, was occupied by Dr. Walter Hayes as a residence, and that the property should have been assessed to said occupant as resident property. The law then in force required that, where real property was owned by a resident outside the tax district where it is situated, it should be assessed to the occupant, if occupied. Tax Law (Laws 1896, c. 908) § 9. This objection goes to the very root of the matter, because the title of the owner can only be divested by assessment of the property to the oc-

'cupant and by such a description as would clearly identify it. Matter of Appln. of N. Y. C. & H. R. R. Co. for Appointment of Commissioners, 90 N. Y. 342; Zink v. McManus, 121 N. Y. 259, 24 N. E. 467; Underhill, as Receiver, v. Keirns, 54 App. Div. 214, 66 N. Y. Supp. 573.

The sale was for unpaid taxes of 1900. The property was assessed as nonresident, when, in fact, it was at the time occupied by Dr. Walter Hayes as a residence. The assessment should have been made to the occupant instead of as nonresident, and was therefore absolutely void. Stewart v. Crysler, 100 N. Y. 378, 3 N. E. 471; People ex rel. Barnard v. Wemple, 117 N. Y. 77, 83, 22 N. E. 761; People ex rel. Buffalo B. P. Association v. Stillwell, 190 N. Y. 284, 293, 83 N. E. 56.

Another objection raised by plaintiff which I think well taken is that there was no sufficient description of the property in the assessment roll whereby it could be definitely identified. No boundaries are given. The assessment merely describes the property as: "Lot 7, Sub. 2, 15 acres, O. R. Jones lot." The property could not be identified from such a description. Instead of 15 acres, the land assessed was less than half that, and the name given was that of a man who had been dead many years. There was nothing given whereby a stranger could separate the assessed portion from other lands on the same lot and subdivision. Unquestionably these defects in the assessment and description of the property were jurisdictional. Joslyn v. Rockwell, 128 N. Y. 334, 340, 28 N. E. 604.

The plaintiff also asserts that the tax roll was not properly verified before any proper officer of the county of Oswego authorized to administer oaths, that the assessment roll did not bear the impress of the seal of the county of Oswego, as required by law, and that no sufficient notice to redeem was given the owner or occupant of the premises sold.

While it seems to me that plaintiff's criticisms as to the improper assessment of the property, imperfect description, and as to the other irregularities mentioned, are meritorious, and while doubtless prompt action would have set aside the tax deed given, the Legislature has limited the time when redress can be sought and obtained.

By the Laws of 1896, c. 908, § 132, it was enacted that every conveyance by a county treasurer, which has for two years been recorded in the office of the clerk of the county in which the lands conveyed thereby are located, shall be conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, and all notices required by law to be given previous to the expiration of the time allowed for redemption, were regular and regularly given, published, and served according to the provisions of law relating thereto, but that all such conveyances, and the taxes and tax sales on which they are based, shall be subject to cancellation by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds; provided, however, that such application be made, or action brought, for such cancellation within five years from the expiration of the period allowed by law for the redemption of lands sold at the particular sale sought to be canceled.

The conveyance in question from the county treasurer of Oswego county was recorded December 20, 1905, and the two years after which the treasurer's deed became conclusive, as provided by said statute, expired December 20, 1907. The sale was made October 29, 1901, and the time allowed by law to redeem from such sale expired October 29, 1902.

No application for cancellation of said deed or tax sale has ever been made, nor has any action ever been brought therefor, and the time limited to make such application or to bring such action expired October 29, 1907.

It would therefore seem that, while defendant's tax title is founded upon proceedings grossly irregular, many of the irregularities being jurisdictional, plaintiff is foreclosed by this statute of limitations from assailing the treasurer's deed to the grantor of the defendant Campbell, recorded December 20, 1905. Any other conclusion would absolutely nullify the statute mentioned.

The plaintiff contends that, inasmuch as the defects of which he complains are jurisdictional, the deed was void, and that the Legislature is powerless to enact any curative statute the effect of which is to deprive an owner of his property without due process of law, and that the statute is therefore unconstitutional. He cites several authorities in support of his contention, among them Joslyn v. Rockwell, 128 N. Y. 334, 28 N. E. 604; Matter of Douglass v. Board of Sup'rs, 172 N. Y. 309, 65 N. E. 162; People v. Inman, 197 N. Y. 200, 90 N. E. 438; Clark v. Kirkland, 133 App. Div. 826, 118 N. Y. Supp. 315. But I think none of the cases cited by plaintiff are in point. The plaintiff contends that the statute (section 132 of Tax Law) is curative; but it seems to me the greater weight of authority is that this statute is clearly a statute of limitations, and that it was within the power of the Legislature to enact such a law as a statute of limitations. While as curative legislation the act might be unconstitutional, as a statute of limitations it is valid. Meigs v. Roberts, 162 N. Y. 371, 56 N. E. 838, 76 Am. St. Rep. 322; People v. Ladew, 189 N. Y. 355, 82 N. E. 431; People ex rel. McGuiness v. Lewis, 127 App. Div. 107, 114, 115, 116, 117, 111 N. Y. Supp. 398.

The power of the Legislature to enact such statutes of limitation and their constitutionality are no longer open to question. Hennepin Imp. Co. v. Schuster, 66 Misc. Rep. 634, 124 N. Y. Supp. 693, at middle of page 702, and cases there cited.

If action had been taken to set aside and cancel these tax proceedings and deed within the time allowed by law, the irregularities in the proceedings are such that the tax title would have fallen, but such action is now barred, and I am constrained to hold that defendant's title thereunder became good.

But plaintiff holds a subsequent tax deed bearing date January 27, 1906, and on that day duly recorded in the Oswego county clerk's office. The sale under which that deed was given was made October 20, 1903, for unpaid taxes assessed in 1902. Assuming that Campbell became the owner under his tax deed hereinbefore referred to, his time to redeem from the 1903 tax sale expired October 20, 1904. At

the time of the 1902 assessment the premises were occupied by a Mrs. Juno. The property was described and assessed in the same manner as in 1900, as nonresident property, and the assessment roll did not bear the county seal of Oswego county. Indeed, the assessment appears to be quite as vulnerable as that culminating in the tax deed to the town of Albion under the assessment of 1900. But, for the same reasons as given relative to the Campbell tax title under that deed, the statute of limitations has run as to plaintiff's said tax deed, and it would seem that all title of the defendant Campbell was thereby divested.

The defendant seeks to avoid the operation of the statute as to the irregularities in plaintiff's tax title upon the grounds: First, that no notice to redeem was ever served upon the occupant of the premises; and, second, that, Campbell having paid the county treasurer the sum of money necessary to redeem from the 1903 sale, plaintiff's claim under his tax deed is barred.

I do not think the operation of the statute is affected by either of these circumstances. The provision of the statute (Tax Law, § 132) that the treasurer's deed is conclusive evidence that all notices required by law to be given previous to the expiration of the time allowed for redemption were regular and were regularly given, published, and served, according to the provisions of law relating thereto, clearly covers any notice to redeem. And, as to the payment of the taxes for which the sale of 1903 was made, such payment was made by Campbell October 30, 1906, long after the redemption period provided by law had expired, and plaintiff's deed was never canceled.

I am therefore constrained to hold that the plaintiff's deed is now beyond attack, and that the plaintiff is entitled to judgment for the possession of the property in question.

As to damages, I do not think the removal of the woodshed has lessened the value of the property. It appears to have been cheaply built, and to have become generally dilapidated and run down, and the defendant has made needed repairs upon the house, and I do not think the evidence on the whole furnishes any basis for money damages in that respect.

The plaintiff should, however, be allowed damages for the use and occupation of the property while adversely held by the defendant Campbell, at the rate of $60 per year.

I think I have disposed of all the material questions involved in this case.

Decision and final judgment may be submitted in accordance with the foregoing memorandum.