PEOPLE ex rel. STAPLES et al. v. SOHMER, State Comptroller.

(Supreme Court, Appellate Division, Third Department. March 6, 1912.)

1. TAXATION (§ 805*) — TAX DEEDS — CANCELLATION — CANCELLATION BY OWNER.

A tax deed may be canceled at the suit of the owner, as well as of the purchaser, pursuant to Tax Law (Consol. Laws 1909, c. 60) § 140, though the limitations prescribed by Const. 1874, art. 7, § 14, within which a purchaser at an invalid tax sale may recover the money paid, has run so as to prevent the purchaser from recovering; the constitutional limitation not affecting the owner's right to apply for a cancellation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1593–1597; Dec. Dig. § 805.*]

2. TAXATION (§ 805*)—TAX DEEDS—CANCELLATION—"DEFECT."

An imperfect description in the assessment roll is a "defect in the proceedings affecting the jurisdiction" to sell the land for taxes within Tax Law (Consol. Laws 1909, c. 60) § 132, authorizing the cancellation

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

of tax deeds for such defects, and hence the provision of that section requiring application for the cancellation to be made within a year from June 15, 1896, in cases of sales made prior to 1895, applies.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1593–1597; Dec. Dig. § 805.*

For other definitions, see Words and Phrases, vol. 2, pp. 1931–1933.]

3. TAXATION (§ 805*)—STATUTES OF LIMITATIONS—VALIDITY.

Tax Law (Laws 1896, c. 908) § 132, providing that an application for canceling tax deeds for jurisdictional defects shall be made, in case of sales held prior to 1895, within one year from June 15, 1896, gives a reasonable time to enforce existing rights, and hence is valid as to tax sales prior to 1896.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1593–1597; Dec. Dig. § 805.*]

4. TAXATION (§ 788*)—TAX DEEDS—PRESUMPTIONS.

It cannot be presumed that the description of property in an assessment roll is the same as that contained in the tax deed.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1555, 1557, 1559–1569; Dec. Dig. § 788.*]

5. TAXATION (§ 805*)—TAX DEEDS—CANCELLATION.

Under Tax Law (Consol. Laws 1909, c. 60) § 140, providing that the comptroller shall not convey any land sold for taxes if he discovers before the conveyance that the sale was, for any cause, invalid or ineffectual to give title to the land sold, a tax deed which does not describe the land so that it can be identified may be canceled without limitation as to time.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1593–1597; Dec. Dig. § 805.*]

6. TAXATION (§ 764*)—TAX DEED—DESCRIPTION OF LAND—SUFFICIENCY.

A tax deed sufficiently describes the land sold if the description enables all persons interested to ascertain by inquiry at the appropriate office or the examination of the assessment rolls what property is assessed, so that it may be identified with reasonable certainty.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1519–1522; Dec. Dig. § 764.*]

7. TAXATION (§ 764*)—TAX DEED—SUFFICIENCY OF DESCRIPTION.

A tax deed sought to be canceled described the land sold as one-fourth of an acre in the county of W., "being lot No. 66 in the village of Unionport." The petition for cancellation showed that there is a definite map on file in the county clerk's office with reference to which tax sales were usually made, upon which the lot in question was numbered "66." Held, that the description was sufficient when made certain by the map, though it did not refer to the map.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1519–1522; Dec. Dig. § 764.*]

Appeal from Special Term, Albany County.

Application for mandamus by the People, on the relation of Mary G. Staples and others, against William Sohmer, as Comptroller of the State of New York. From an order denying the application, relators appeal. Affirmed.

The petition of relators shows: That they are the owners of certain property in the annexed district of the city of New York, formerly in the town of Westchester, Westchester county, known and described as follows: "All that certain lot, piece or parcel of land situate, lying and being in the borough of the Bronx, city, county, and state of New York, known as lot No. 66 on certain map entitled 'Map of Unionport,' made by Bonnet & Savery, Civil En-

gineers, dated November 1, 1852, and filed in the office of the register of West-chester county, August 23, 1854, as Map No. 29." That in 1859 the then comptroller attempted to sell said property for unpaid taxes for the year 1855, and that in 1862 the comptroller executed and delivered to a certain party a deed purporting to convey the following premises: "The following tract, piece or parcel of land situated in the county of Westchester, viz.: one-fourth of an acre of land to be laid out at the expense of the party of the second part, being lot No. 66 in the village of Unionport, which said described piece or parcel of land was sold by the said comptroller at the said sale under and by virtue of the said act." Said deed was recorded in Westchester county in 1862. Relators claim that said sale and deed are void on account of the land being imperfectly described in the assessment rolls for the year 1855, and also for the reason that the description of the premises in the deed is indefinite, insufficient, and does not identify any ascertainable plot of ground, although it constitutes a cloud upon their title. Relators further state that they have offered the present comptroller the amount of the tax for which said premises were sold, with interest, and have requested him to cancel said sale and deed. The application of relators was without notice, and the comptroller submitted no affidavits in opposition.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, and BETTS, JJ.

Merle I. St. John, for appellants.
Thomas Carmody, Atty. Gen., for respondent.

SMITH, P. J. [1] Relators' claim that mandamus issue is apparently based upon section 140 of the Tax Law (Consol. Laws 1909, c. 60), which provides that the comptroller, upon discovering that a sale of lands for unpaid taxes is for any cause invalid, may cancel the sale upon receiving proof thereof and upon the application of any person interested. The statute was formerly construed as applying only to purchasers at tax sales (People ex rel. Witte v. Roberts, 144 N. Y. 234, 39 N. E. 85; People ex rel. Millard v. Roberts, 8 App. Div. 219, 40 N. Y. Supp. 457, affirmed 151 N. Y. 540, 45 N. E. 941), but by the amendment of 1896 the application for cancellation may also be made by the owner of the lands at the time of the tax sale. Such application is without notice to interested parties, but by section 141 as amended in 1897 any person aggrieved may apply on notice to set aside any cancellation of sale so made. People ex rel. McGuinness v. Lewis, 127 App. Div. 107, 109, 110, 111 N. Y. Supp. 398. The comptroller contests this appeal upon the authority of People ex rel. Sudam v. Morgan, 45 App. Div. 19, 60 N. Y. Supp. 898, which was a claim by the representatives of a purchaser at tax sales in 1848 and 1852 for reimbursement under section 140, on the ground of certain jurisdictional defects, including a claim of indefiniteness in the description. It was there held that the obligation of the comptroller to refund was barred by lapse of time under the provisions of article 7, § 14, of the Constitution of 1874. The comptroller now claims that this decision is a bar to the present application, although made not by a purchaser but by an owner, on the ground that the comptroller would be compelled if he should cancel this tax deed to refund the moneys received on the tax sale, which refund is prohibited by the constitutional provision mentioned. But this proceeding calls for a return of no money. The deed may be held void at the instance of the owner, even

134 N.Y.S.—35

though the purchaser has lost his right to reimbursement for the moneys paid. The constitutional provision creating a limitation of time in which the purchaser can obtain from the state his money does not by indirection create a limitation of the right of an owner to apply for cancellation.

[2] The respondent further claims that the present proceedings were long since barred by section 132 of the Tax Law and the statutes from which it has been derived.

[3, 4] Section 132, in effect June 15, 1896 (Laws 1896, c. 908), provides that all tax deeds heretofore issued by the comptroller "and the taxes and tax sales on which they are based, shall be subject to cancellation * * * by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds, * * * provided, however, that such application shall be made * * * in the case of all sales held prior to the year eighteen hundred and ninety-five within one year from June fifteenth, eighteen hundred and ninety-six." An imperfect description, as alleged by relators, in the assessment rolls sufficient to avoid the tax deed, seems to fall within the class "defects in the proceedings affecting the jurisdiction," so that any application now based thereon is barred by the statute. Shea v. Campbell, 71 Misc. Rep. 222, 230, 128 N. Y. Supp. 508. Section 132 and the statutes from which it is derived have frequently been before the courts, and have been held to be both curative laws and statutes of limitations. Meigs v. Roberts, 162 N. Y. 371, 377, 378, 56 N. E. 838, 76 Am. St. Rep. 322. Curative acts may affect irregularities or informalities, not jurisdictional defects, but "in the operation of a statute of limitations otherwise valid there is no difference in its effect on jurisdictional defects or irregularities." Bryan v. McGurk, 200 N. Y. 332, 335, 93 N. E. 989, 900; Meigs v. Roberts, 162 N. Y. 378, 56 N. E. 838, 76 Am. St. Rep. 322. "A statute of limitations to be valid must give a reasonable time after its enactment to enforce existing rights." Section 132, as applied to tax proceedings had prior to 1896, gave the owner one year from the date of its enactment in which to enforce his rights on account of jurisdictional defects in the proceedings, and is therefore a valid statute of limitations. Bryan v. McGurk, 200 N. Y. 338, 93 N. E. 989. It follows that in the case at bar the relators, not having within the year limited by law instituted proceedings for cancellation of the tax sale and deed on account of the alleged imperfect description in the assessment rolls, are now barred from attempting such cancellation upon the ground mentioned. But this argument assumes the invalidity of the assessment. The assessment roll is not in the record. The allegation of insufficiency in the petition states no facts, and is only allegation of a legal conclusion. The description of the property in the assessment roll cannot even be presumed to be the same as in the deed. Section 132 of the Tax Law creates a presumption of sufficiency and in the case at bar a conclusive presumption.

[5, 6] The further question remains, however, whether relators may now apply to cancel the tax sale upon the ground that the description in the tax deed is imperfect under the broader classification stated

in section 140 "that the sale was for any cause invalid or ineffectual to give title to the lands sold." If, as claimed, the tax deed does not sufficiently describe any tract of land, the sale represented by such tax deed is obviously invalid, and conveys no rights whatever. This would seem to be a situation not covered by section 132, but one which may be attacked at any time under section 140, which specifies no period of limitation within which application for cancellation may be made. Is the description in this tax deed insufficient? The test in tax titles is:

"Whether the description is sufficiently definite to enable the owner and all persons interested to know and ascertain, by inquiry at the appropriate office or examination of the assessment rolls, what premises are assessed, and to identify them, with reasonable certainty, so that it may fairly be said that a particular tract or parcel of land is the parcel or tract assessed, and to which the purchaser on the tax sale is entitled to possession." Hennepin Improvement Company v. Schuster, 66 Misc. Rep. 634, 648, 649, 124 N. Y. Supp. 693, 703; Shea v. Campbell, supra, 71 Misc. Rep. 230, 128 N. Y. Supp. 508; Cone v. Lauer, 131 App. Div. 193, 115 N. Y. Supp. 644.

[7] The description in the tax deed here is one-fourth acre of land in the county of Westchester, "being lot No. 66 in the village of Unionport." The relators' claim is that no particular map or tract is mentioned or referred to, so that "lot No. 66" was incapable of ascertainment, and this description consequently failed to give proper notice to the then owner of the premises sold. The deed that relators stand on is no more definite as to metes and bounds than the one they question, but their deed does refer "lot No. 66" to a certain described map presumably capable of identification. Does the fact that the tax deed contains no such reference in connection with "lot No. 66" render this deed invalid? The petition itself shows that there is a definite map on file in the county clerk's office upon which this lot is numbered "66." It is not probable that there are other maps on file with numbered lots which could cause confusion. If such a state of facts does exist, it would seem to be for the petitioner to so show. The test of sufficiency of the description in this deed is the same as in the case of ordinary deeds. Under such a description with one map only recorded in the county clerk's office with numbered lots according to which sales were ordinarily made, I think the grantee would be deemed a record owner of the title. The description on its face uncertain is made certain by extraneous facts.

Nor do we think that our views as expressed are in conflict with the decision in the case of People ex rel. National Park Bank v. Metz, 141 App. Div. 600, 126 N. Y. Supp. 986, upon which the relators rely. This was an application for a writ of mandamus made by an owner of lands in the borough of the Bronx, formerly in the town of Westchester, to compel the comptroller of the city of New York and the collector of arrears and assessments of the same city to accept payment of a void tax and to cancel the sale based thereon. The sale was made in 1889 by the town supervisor, but it did not appear that any tax lease had been issued to the purchaser upon the sale. The sale having been made by the town supervisor is not protected by section 132 of the tax law, nor did the lease then considered come within the

section. Matter of Ritter Place, 139 App. Div. 473, 124 N. Y. Supp. 351. The question there considered was the validity of the assessment roll which is the subject of strict statutory direction. The rule for the construction of deeds was not discussed or decided. The decision therefore is not helpful in determining the questions here presented.

Order appealed from affirmed, and motion denied, with costs to respondent.

Order unanimously affirmed, with costs. All concur.