THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* WILFRED PATENAUDE et al., Defendants.

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* FLORENCE PATENAUDE et al., Defendants.

Supreme Court, Special Term, Saratoga County, August 18, 1954.

*Nathaniel L. Goldstein, Attorney-General (Warren H. Gilman* and *Emil Woldar* of counsel), for plaintiff.

*John F. Doyle* and *Vincent P. Pickett* for Wilfred Patenaude and others, defendants.

*Howard J. Reilly* for Arthur De Blois and others, defendants.

AULISI, J. These are actions in ejectment and involve Lot No. 7 and Lot No. 43 on the Hudson View Realty Company map located in the hamlet of Riverside, town of Stillwater, Saratoga County. The premises were sold to the People of the State of New York by the State Tax Commission on June 8, 1926, for unpaid taxes for the years 1920, 1921, 1922 and 1923, and a tax deed was executed and delivered to the plaintiff on February 9, 1928. Said deed was recorded in the Saratoga County Clerk's office on May 3, 1929, in Book 356 of Deeds at page 115.

Lot No. 7 conveyed to Felix De Blois by the Hudson View Realty Company by deed dated September 5, 1905, and recorded on the same day in the Saratoga County Clerk's office in Book 254 of Deeds at page 292, is described as follows:

"All that tract or parcel of land, situate in the Town of Stillwater, County of Saratoga and State of New York, bounded and described as follows:

"Beginning at a point on the west side of West Street on the northeast corner of lands sold by said first party to Cheri Bedard by deed dated October 27, 1904, running thence northerly along said west side of West Street fifty (50) feet, thence westerly at an angle of 90° x one hundred forty-one and two-tenths (141-2/10) feet to lands of the Boston and Maine Railroad Company, thence southerly along said Company's lands about fifty (50) feet to lands of said Cheri Bedard, thence easterly along the northerly boundary of said Bedard's lands about one hundred forty-two and nine-tenths (142-9/10) feet to the place of beginning, being Lot No. 7 on the map of said first party on file in the office of the Clerk of Saratoga County."

Lot No. 43 conveyed to William W. Patenaude and Florence Patenaude, his wife, by Emmitt Lee and wife by deed dated November 10, 1919, and recorded in the Saratoga County Clerk's office on August 11, 1925, in Book 334 of Deeds at page 459, is described as follows: "All that tract or parcel of land, situate in the Town of Stillwater, County of Saratoga and State of New York, all that certain lot of land number forty-three as laid down on a map of Hudsonview Realty Company, map filed in County Clerk's Office of Saratoga County, State of New York."

The description of said lots on the assessment rolls is as follows:

"*De Blois,* Felix, M.F.Dist. 10; West Street; West (side); Lot 7 Hudsonview Realty Co's Plot; 1/8 acres.

"*Patenaud,* William, M.F.Dist. 10; Champlain Ave.; South (side); Lot 43 Hudsonview Realty Co. Plot; 1/8 acres."

The notice of sale reads in part as follows:

"State of New York
Comptroller's Office,
Albany, March 1, 1926.
Notice is hereby given, pursuant to law, that the following is a list of lands situated in the County of Saratoga, New York, which are included in a general list of lands advertised by me to be sold for arrears of taxes; and that so much

of said lands as may be necessary to discharge the taxes, interest and charges due thereon at the time of sale, will on the 8th day of June next, and the succeeding days, be sold at public auction, at the Capitol, in the City of Albany.
Vincent B. Murphy, Comptroller
* * *

Saratoga County

Lot                                                                   Acres

* * *

Stillwater, Town of * * * Hudson View Realty Company Map filed in Saratoga County Clerk's Office
* * *
7 * * *
43 * * * ,,

No question is raised as to plaintiff's compliance with the provisions of law then in effect with respect to notice of redemption, publication and service of notice thereof, except that Felix De Blois having died during the tax sale proceedings the notice to redeem Lot No. 7 was served on his widow, Mrs. F. De Blois, at Mechanicville, N. Y., which is not within the tax district in which said lot is situated and that at the expiration of one year from the last day of the tax sale the heirs at law of the said Felix De Blois were in actual occupancy of said lot.

The description of said lots in the tax deed is as follows:
" Stillwater, Town of, * * *
· Hudsonview Realty Company,
Map filed in the Saratoga County Clerk's Office,
* * *

Lot Seven (7); being fifty (50) feet by one hundred forty (140) feet, more or less, against which the name ' Felix DeBlois ' appears on the assessment rolls of the Town of Stillwater for the years 1920 to 1923 inclusive. * * *
Lot Forty-three (43); being fifty (50) feet on front and rear, one hundred twenty-three and one-tenth (123-1/10) feet on east and one hundred thirty-four and thirty-five one-hundredths (134-35/100) feet on west side, against which the name ' William Petenaud ' appears on the assessment rolls of the Town of Stillwater for the years 1922 and 1923.
* * * ,,

During the years 1921, 1922, 1923 and prior thereto there were three maps on file in the Saratoga County Clerk's office labeled as follows:

" A. Map of the property and subdivision of the Hudson-view Realty Co., Mechanicville, N. Y. 1899, C. E. Hicks, Engineer.

" B. Supplement to the map of the property and subdivision of the Hudsonview Realty Company, Mechanicville, New York filed in the office of the County Clerk — Jan. 22, 1900, Aug. 26, 1907.

" C. Map of property of Hudsonview Realty Co., Mechanic-ville, N. Y., May 1915, C. E. Hicks, Eng."

There are no other maps of property of the Hudson View Realty Company that were on file in said clerk's office during said years and Lot No. 7 appears on maps " A " and " C " and Lot No. 43 appears on maps " A ", " B " and " C ". Each of said lots on these maps refers to the same property as referred to in the tax deed.

Occupying the premises for about thirty years without paying any taxes, rent or having the permission of the plaintiff, the defendants now challenge the title of the plaintiff and contend that a valid title was not acquired by the plaintiff for the reason that (1) the descriptions of the lots upon the assessment rolls were not sufficiently definite within the meaning of the Tax Law; (2) that as to Lot No. 7 the service of the notice to redeem was defective; (3) that sections 131, 132 and 137 of the Tax Law do not apply as Statutes of Limitations and (4) that the premises can not be considered as part of the forest preserve.

I am of the opinion that the plaintiff's title to both lots is valid. It is the well-settled law of this State that where the sufficiency of the description is in issue in tax titles, the test is " whether the description is sufficiently definite to enable the owner and all persons interested to know and ascertain, by inquiry at the appropriate office or examination of the assess-ment roll, what premises are assessed and to identify them, with reasonable certainty, so that it may be fairly said that a par-ticular tract or parcel of land is the parcel or tract assessed and to which the purchaser on the tax sale is entitled to possession ". (*Hennepin Improvement Co.* v. *Schuster,* 66 Misc. 634, 648; *Shea* v. *Campbell,* 71 Misc. 222; *Cone* v. *Lauer,* 131 App. Div. 193; *People ex rel. Staples* v. *Sohmer,* 150 App. Div. 8; *Blum* v. *Nassau Purchasing & Bldg. Corp.,* 256 N. Y. 232.)

The defendants strongly urge the applicability to this case of Judge KINGSLEY's opinion in *Hunt* v. *Dekin* (187 Misc. 649, 653, affd. 273 App. Div. 800, affd. 298 N. Y. 575) in which he said " When the description in the deed to plaintiff is compared with that contained in the assessments, it is plain that they do not agree and that no sufficient words or suggestions are contained

in the latter identifying or calling attention to the former ''. He further states '' In my opinion the taxing officials failed to comply with the provisions above mentioned in respect to a sufficiently definite description or to give such a description of the premises as would enable a diligent taxpayer to identify his land, and I so find ''. The court then cites the difference between the description in the deed and that set forth on the assessment roll and I believe that it was that variance which led the learned Justice to decide the case as he did.

We have no such variance here. In examining the assessment rolls we find that same furnish the names of the owners, the names and sides of the streets on which the premises are located, the designation of the fire district and the lot numbers on the Hudson View Realty Company plot.

The defendants contend that the failure of the assessment rolls to include the names of the abutting owners as required by column 5 of the form and to further identify the map other than '' Hudson View Realty Co. Plot '' did not meet the requirements of the Tax Law and therefore rendered the notice of sale and all subsequent proceedings void. I cannot agree with that contention.

The descriptions on the assessment rolls were not such that would mislead a diligent taxpayer. The reference to the Hudson View Realty Company plot and the display of lot numbers were sufficient to direct an interested party to the map on file in the County Clerk's office, bearing the name of the Hudson View Realty Company. Section 21 (subd. 4) of the Tax Law provides: '' When a tax map has been approved by the tax commission, reference to the lot, block and section number or other identification numbers of any parcel on said map shall be deemed a sufficient description of said parcel on the assessment-roll ''.

It will be noted above that all three maps on file in the County Clerk's office contained Lot No. 43 and two of the maps referred to Lot No. 7. In the latter case the third map which did not designate Lot No. 7 was a supplement map and was so marked. The existence of three maps did not alter the situation any more than if there were but one, for the maps properly referred to would clearly lead anyone in the exercise of reasonable diligence to the identity of his property. The deeds under which the defendants claim title and the notice of sale on which were based the tax deeds to plaintiff make reference to the Hudson View Realty Company map and there is no question presented that the premises so designated are the same as that which are the subjects of these actions. I do not see how the defendants here

could be misled for the description is sufficiently accurate to identify the land as assessed with the land described in their deeds.

Assuming, however, that an error was made, it must be recognized that all errors do not vitiate an assessment and that the errors must be of such magnitude that the description is not sufficiently accurate to identify the parcel. (Tax Law, § 55-a; *McCoun* v. *Pierpont,* 232 N. Y. 66.)

Having concluded that the description of the two lots was sufficiently accurate to identify them, it is unnecessary to discuss at great length the other questions raised by the defendants.

It appears to me that even though there was a defect in the service of the notice to redeem Lot No. 7, the defendants are barred from asserting this objection for the reason that they cannot attack the title after the expiration of three years from the day of the tax sale. Sections 131, 132 and 137 of the Tax Law are applicable to this case where the owners failed to redeem within three years after the property was sold on tax sale. (*Mabie* v. *Fuller,* 255 N. Y. 194; *Callahan* v. *Underwood,* 260 App. Div. 352, affd. 285 N. Y. 620; *Quist* v. *Gwinup,* 267 App. Div. 224; *Potter* v. *County of Essex,* 272 App. Div. 969; *Matter of Kantor* [*Hutner*], 280 App. Div. 605.)

The Tax Law (§ 3) provides that " All real property within the state is taxable unless exempt from taxation by law " and Judge HUBBS in *Mabie* v. *Fuller* (*supra*, p. 201) said " Everyone is presumed to know the Tax Law and to know that his land is being assessed and can be sold for non-payment of taxes and it is the duty of a landowner to see to it that the taxes upon his land are paid within the statutory time. If he fails for any reason the law still gives him in the case of occupied land three years from the last day of the sale within which to redeem. That is a reasonable time and if he fails to redeem within that time public policy requires that the grantee's title become absolute."

Finally the defendants further argue that the lands are not part of the forest preserve and I must admit that it is difficult for me to see how these lots can consistently be used as wild forest lands. The premises are located in a highly populated community just north of the city line of the city of Mechanicville and this community consists of several paved streets, private residences and large portions of the buildings of the West Virginia Pulp and Paper Company. It includes a sewer and water district, is completely electrified and has in its midst a public school, stores for the public convenience and a separate election district. It is adjacent to the main lines of the Boston

and Maine Railroad, only two miles south of the village of Stillwater, and near U. S. Public Highway No. 4, and the Hudson River. From a practical sense can it seriously be contended by the plaintiff that these two lots, each with a residence structure thereon, constitute wild forest lands? Obviously the lots are unsuitable and impractical to be in fact forever kept as wild forest lands.

We are confronted, however, with section 63 (subd. 1) of the Conservation Law which provides as follows:

" The forest preserve shall include the lands owned or hereafter acquired by the state within   *   *   *   the counties of *   *   *   Saratoga   *   *   *   except

" (a) Lands within the limits of any village or city, and

" (b) Lands not wild lands and not situated within either the Adirondack park or the Catskill park acquired by the state on foreclosure of mortgages made to loan commissioners."

It has also been held that " The language of the statute thus specifying the lands which are included within the forest preserve is clear and definite and does not in itself require construction. Its plain and positive language is made even more certain by the fact that some exceptions are stated therein. It is suggested that serious trouble and inconvenience may arise if lands owned by the state within the boundaries of the forest preserve but not specially purchased and held as wild forest lands are treated as a part of the forest preserve. The questions that may arise about lands owned by the state within the boundaries of the forest preserve, but which are now devoted or which it may be desirable to devote to purposes other than as wild forest lands, may be left for solution when they arise." (*People* v. *Fisher*, 190 N. Y. 468, 480.)

The lands we are concerned with here are not within the limits of any village or city. The term " village " means an incorporated village. (General Construction Law, § 54.)

I must, therefore, conclude that the lots are part of the forest preserve, with the hope that the Legislature will solve the problem.

In view of the foregoing, I find that the plaintiff has title in fee to Lots No. 7 and No. 43, is entitled to immediate possession thereof and that the defendants be ejected therefrom.

An order may be submitted on notice, in accordance with the above determination.